667 So.2d 401 (1995)
Kayla BRADFORD, a minor, by and through her parent and natural guardian, Nicole BRADFORD, and Nicole Bradford, individually, Appellants,
v.
FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION, Appellee.
No. 94-0374.
District Court of Appeal of Florida, Fourth District.
December 27, 1995.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellants.
David W. Black of Atkinson, Diner, Stone, Black & Mankuta, P.A., Hollywood, for appellee.
PER CURIAM.
Plaintiffs, who are the appellants, filed an administrative claim pursuant to Florida's Birth-Related Neurological Injury Compensation Act (NICA), but contended in the administrative proceeding that they were not given notice as required by section 766.316, Florida Statutes (1993), and that NICA was, therefore, inapplicable. The hearing officer concluded that notice was not a condition precedent to the application of NICA. He also found as a matter of fact that the injury to plaintiffs' child did not occur during birth, but rather several hours after birth, and did not therefore occur "in the course of labor, delivery, or resuscitation in the immediate postdelivery," as required by section 766.302(2). He thus denied recovery under NICA.
Plaintiffs seek direct review of that order pursuant to section 766.311(1), raising only *402 the issue of whether the notice requirement is a condition precedent to the applicability of NICA. In Mills v. North Broward Hospital, 664 So.2d 65 (Fla. 4th DCA 1995), we concluded that the notice required by section 766.316 is a condition precedent. Accordingly, we reverse, and as we did in Mills, certify the following question as one of great public importance:
DOES SECTION 766.316, FLORIDA STATUTES (1993), REQUIRE THAT HEALTH CARE PROVIDERS GIVE PRE-DELIVERY NOTICE TO THEIR OBSTETRICAL PATIENTS OF THEIR PARTICIPATION IN THE FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION PLAN AS A CONDITION PRECEDENT TO THE PROVIDERS INVOKING NICA AS THE PATIENT'S EXCLUSIVE REMEDY?
Reversed.
GUNTHER, C.J., and DELL, J., concur.
KLEIN, J., dissents with opinion.
KLEIN, Judge, dissenting.
The very first provision of NICA, section 766.301, Florida Statute (1993) provides:
(1) The Legislature makes the following findings:
(a) Physicians practicing obstetrics are high-risk medial specialists for whom malpractice insurance premiums are very costly, and recent increases in such premiums have been greater for such physicians than for other physicians.
(b) Any birth other than a normal birth frequently leads to a claim against the attending physician; consequently, such physicians are among the physicians most severely affected by current medical malpractice problems.
(c) Because obstetric services are essential, it is incumbent upon the Legislature to provide a plan designed to result in the stabilization and reduction of malpractice insurance premiums for providers of such services in Florida.
(d) The costs of birth-related neurological injury claims are particularly high and warrant the establishment of a limited system of compensation irrespective of fault.
(2) It is the intent of the Legislature to provide compensation, in a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation. This plan shall apply only to birth-related neurological injuries.
The notice provision, section 766.316, Fla. Stat. (1993), which is found at the end of the act, provides:
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan.
My reading of NICA is that the legislature intended the act to apply to all physicians who joined, and did not intend to make it conditional on whether notice was given. If the legislature had intended to make notice a condition precedent, it would have expressly said so, as it has done on other occasions. See e.g., Levine v. Dade County School Bd., 442 So.2d 210 (Fla. 1983) (§ 768.28(6) plaintiff must give notice of a claim against the state within 3 years); Ingersoll v. Hoffman, 589 So.2d 223 (Fla. 1991) (plaintiff must give notice to defendant prior to filing claim for medical malpractice); Stresscon v. Madiedo, 581 So.2d 158 (Fla. 1991) (lienor must comply with owner's request for written statement within 30 days).
Although the parties have not cited it, I find a Florida Supreme Court decision involving the notice requirement in our worker's compensation law analogous here. In Allen v. Estate of Carman, 281 So.2d 317 (Fla. 1973), an employer with fewer than three employees was not required to have worker's compensation coverage, but did obtain *403 it. He did not, however, post the notice required by § 440.05, Florida Statutes (1967):
Every employer who ... waives such exemption ... shall post and keep in a conspicuous place or places in and about his place or places of business typewritten or printed notices to such effect in accordance with a form to be prescribed by the commission. He shall file a duplicate of such notice with the commission.
In rejecting the claimant's position that the lack of notice waived worker's compensation immunity, the court concluded that "the critical act contemplated by the statute to secure to employer and employee the benefits thereunder is the purchase and acceptance of the policy, not the posting of notice." Id. at 322. There is a striking similarity between NICA and our worker's compensation law, since in both the legislature took away a common law right to sue and provided an administrative remedy for compensation without fault.
In the definitions portion, section 766.302(7), Florida Statutes (1993) provides:
"Participating physician" means a physician licensed in Florida to practice medicine who practices obstetrics or performs obstetrical services either full time or part time and who had paid or was exempted from payment at the time of the injury the assessment required for participation in the birth-related neurological injury compensation plan for the year in which the injury occurred. Such term shall not apply to any physician who practices medicine as an officer, employee, or agent of the Federal Government.
Physicians reading the above definition would, in my opinion, conclude that if they elected to participate, they would unconditionally become part of this no-fault compensation plan and would no longer have to maintain malpractice insurance coverage for babies suffering brain or spinal cord injuries during birth. Making the giving of notice a condition precedent, where the legislature did not say it is a requirement, may leave these obstetricians without insurance coverage for a civil malpractice suit because they thought, relying on the statute, that they did not need it.
When our legislature intends to make a statutory provision a condition precedent, it explicitly says so and explains how and when. For example, in the notice before filing provision of our present medical malpractice law, section 766.106(2), Florida Statutes (1993), it is provided that after presuit investigation, and prior to filing a claim for medical malpractice, a claimant must notify prospective defendants by certified mail, return receipt requested. It further specifies exactly what information must be contained in the notice. The statute in the present case contains no provision as to when the notice is to be given, and only a general statement  an explanation of patient's rights and limitations  of what must be in the notice. Construing the statute to require notice as a condition precedent will, I am concerned, cause these cases to turn on swearing matches as to whether notice was received, and will also result in litigation as to whether the form of notice, if received, was sufficient.
The interpretation of the majority makes me wonder what happens if it is in the best interest of the patient to proceed through NICA, because there is no negligence, but the physician is a participant in NICA who gave no notice? Does the patient have the option to waive the lack of notice and obtain benefits under NICA? Or could the physician take the position that NICA was inapplicable because he or she gave notice, and leave the patient, who cannot prove negligence, with no remedy.
I am not unsympathetic to the view that if prospective patients were notified that the physician was participating in NICA, the patient might well seek treatment elsewhere. The fact remains, however, that the statute does not say notice is a condition precedent.
In Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla. 1963), our supreme court explained:
Courts are, of course, extremely reluctant to add words to a statute as enacted by the Legislature. They should be extremely cautious in doing so. The recognized rule, however, is that when a word has obviously been omitted and the context of the act otherwise reflects the clear and unequivocal *404 legislative intent, then this intent may be effectuated by supplying the word or words which have been inadvertently omitted. The courts cannot and should not undertake to supply words purposely omitted. When there is doubt as to the legislative intent or where speculation is necessary, then the doubts should be resolved against the power of the courts to supply missing words. On the other hand, when the addition of a word is necessary to prevent an act from being absurd and in order to conform the statute to the obvious intent of the Legislature, then words which were clearly omitted through some clerical or scrivener's misprision may be added by the court. (Emphasis added.)
Making the notice provision in the statute a condition precedent is not necessary to keep the act from being absurd, nor is it necessary to carry out the legislature's intent. I therefore dissent.