696 So.2d 308 (1997)
GALEN OF FLORIDA, INC., et al., Petitioners,
v.
Lori Ann BRANIFF, et al., Respondents.
Robert BAZLEY, M.D., Petitioner,
v.
Lori Ann BRANIFF, et al., Respondents.
Nos. 86485, 86486.
Supreme Court of Florida.
May 1, 1997.
Rehearing Denied July 1, 1997.
Robert E. Broach, Alan K. Ragan and James C. Rinaman, Jr. of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, and Jack W. Shaw, Jr. and Michael J. Obringer of Brown, Obringer, Shaw, Beardsley & DeCandio, Jacksonville, for Petitioners.
F. Shields McManus of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, Stuart, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Respondents.
Dock A. Blanchard of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for The Academy of Florida Trial Lawyers, Amicus Curiae.
Vincent J. Rio, III, Stephen E. Day, Raymond L. Roebuck and P. Heath Brockwell of Taylor, Day & Rio, Jacksonville, for the Florida Statutory Teaching Hospital Council, Association of Voluntary Hospitals of Florida, Florida Hospital Association, and Florida Medical Association, Amici Curiae.
Bruce S. Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, and Phillip Taylor of Taylor & Swope, Tampa, for Jaimes McKaughan and Darlene McKaughan, individually and on behalf of their son Michael McKaughan, Amici Curiae.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for Athey and Sierra, Amicus Curiae.
KOGAN, Chief Justice.
We have for consideration the following question certified by the First District Court of Appeal to be of great public importance:
WHETHER SECTION 766.316, FLORIDA STATUTES (1993), REQUIRES THAT HEALTH CARE PROVIDERS *309 GIVE THEIR OBSTETRICAL PATIENTS PRE-DELIVERY NOTICE OF THEIR PARTICIPATION IN THE FLORIDA BIRTH RELATED NEUROLOGICAL INJURY COMPENSATION PLAN AS A CONDITION PRECEDENT TO THE PROVIDERS' INVOKING NICA AS THE PATIENTS' EXCLUSIVE REMEDY?
Braniff v. Galen of Florida, Inc., 669 So.2d 1051, 1053 (Fla. 1st DCA 1995). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
In answer to the certified question, we hold that as a condition precedent to invoking the Florida Birth-Related Neurological Injury Compensation Plan as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery.
The Braniffs brought a medical malpractice action against the obstetrician who delivered their daughter and the hospital where the delivery took place. The Braniffs alleged that their daughter suffered severe neurological impairment and permanent brain damage as a result of the defendants' negligence during the delivery. The defendants responded with a motion to dismiss, claiming that the Braniffs were limited to an administrative remedy under Florida's Birth-Related Neurological Injury Compensation Plan (NICA plan), sections 766.301-766.316, Florida Statutes (1993).
The Braniffs took the position that their civil suit was not precluded because the defendants had failed to comply with the NICA plan's notice provision, section 766.316, Florida Statutes (1993). The Braniffs maintained that as a condition precedent to asserting NICA exclusivity, section 766.316 required the defendants to give Mrs. Braniff notice of their participation in the plan prior to delivery. Thus, since Mrs. Braniff was not given the requisite pre-delivery notice, she was not limited to NICA's administrative remedy. The defendants contended that they had notified Mrs. Braniff of their participation in the NICA plan prior to delivery. They further maintained that pre-delivery notice is not required under the plan nor is exclusivity of the NICA remedy conditioned on predelivery notice.
The trial court dismissed the civil action, concluding that section 766.316 does not require pre-delivery notice. The First District reversed, holding that pre-delivery notice is a condition precedent to exclusivity under the plan and that the factual dispute over whether notice was given in this case should be resolved by the jury. We are in general agreement with the district court.
Section 766.316 provides in pertinent part:
Each hospital with a participating physician on its staff and each participating physician ... under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan.
Without exception the district courts of appeal that have addressed the issue have read section 766.316 to require pre-delivery notice. Braniff; Siravo v. Florida Birth-Related Neurological Injury Compensation Ass'n, 667 So.2d 971 (Fla. 4th DCA 1996); Bradford v. Florida Birth-Related Neurological Injury Compensation Ass'n, 667 So.2d 401 (Fla. 4th DCA 1995); Behan v. Florida Birth-Related Neurological Injury Compensation Ass'n, 664 So.2d 1173 (Fla. 4th DCA 1995); Mills v. North Broward Hosp. Dist., 664 So.2d 65 (Fla. 4th DCA 1995); Turner v. Hubrich, 656 So.2d 970 (Fla. 5th DCA 1995).
We agree with the district courts that the only logical reading of the statute is that before an obstetrical patient's remedy is limited by the NICA plan, the patient must be given pre-delivery notice of the health care provider's participation in the plan. Section 766.316 requires that obstetrical patients be given notice "as to the limited no-fault alternative for birth-related neurological injuries." That notice must "include a clear and concise explanation of a patient's rights and limitations under the plan." § 766.316. This language makes clear that the purpose of the notice is to give an obstetrical patient an *310 opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies. Turner v. Hubrich, 656 So.2d 970, 971 (Fla. 5th DCA 1995). In order to effectuate this purpose a NICA participant must give a patient notice of the "no-fault alternative for birth-related neurological injuries" a reasonable time prior to delivery, when practicable.
Our construction of the statute is supported by its legislative history. Florida's Birth-Related Neurological Injury Compensation Plan was proposed by the 1987 Academic Task Force for Review of the Insurance and Tort Systems. In its November 6, 1987, report, the Task Force recommended adoption of a no-fault compensation plan for birth-related neurological injuries similar to the then newly enacted Virginia plan (1987 Va. Acts Ch. 540). Academic Task Force for Review of the Insurance and Tort Systems, Medical Malpractice Recommendations 31 (Nov. 6, 1987) (hereinafter Task Force Report).
However, the Task Force was concerned that the Virginia legislation did not contain a notice requirement and recommended that the Florida plan contain such a requirement. The Task Force believed that notice was necessary to ensure that the plan was fair to obstetrical patients[1] and to shield the plan from constitutional challenge.[2] The Task Force explained in its report:
The Virginia statute does not require participating physicians and hospitals to give notice to obstetrical patients that they are participating in the limited no-fault alternative for birth-related neurological injuries. The Task Force recommends that health care providers who participate under this plan should be required to provide reasonable notice to patients of their participation. This notice requirement is justified on fairness grounds and arguably may be required in order to assure that the limited no fault alternative is constitutional.

Task Force Report at 34 (emphasis added). Since Florida's NICA plan was the result of the Task Force's report, it is only logical to conclude that the plan's notice requirement was included in the Florida legislation as a result of this recommendation and therefore was intended to be a condition precedent to immunity under the plan.
This Court's 1973 decision in Allen v. Estate of Carman, 281 So.2d 317 (Fla.1973), does not support a contrary conclusion. Contra Bradford v. Florida Birth-Related Neurological Injury Compensation Ass'n, 667 So.2d 401, 402 (Fla. 4th DCA 1995) (Klein, J., dissenting). In Allen, the Court addressed the section 440.05 notice[3] requirement contained in the 1967 version of Florida's Worker's Compensation Act.
The employer in Allen, who had fewer than three employees, was not required to have worker's compensation coverage under the then existing law. Allen, 281 So.2d at 320 (citing § 440.02(1)(b)(2), Fla. Stat. (1967)). However, under the "Waiver of Exemption" provision, section 440.04, Florida Statutes (1967), the employer could waive the exemption by obtaining coverage. The employer obtained coverage but failed to post notice of the waiver of exemption in accordance *311 with section 440.05, Florida Statutes (1967).
After considering the 1967 "Waiver of Exemption" provision, the Court held that an employer's failure to post the required notice did not preclude the employer from asserting worker's compensation immunity. Allen, 281 So.2d at 322. Although under the 1967 version of the Act, participation in the worker's compensation plan was voluntary for the employer in Allen, the decision was not based on that fact. Rather, it was based on the plain language of section 440.04(3), Florida Statutes (1967), which expressly provided that effective waiver of exemption from chapter 440 is not dependant upon the posting of notice as provided in section 440.05. Allen 281 So.2d at 322. Section 440.04(3), which is currently found at section 440.04(2), Florida Statutes (1995),[4] provides:
When any policy or contract of insurance specifically secures the benefits of this chapter to any person not included in the definition of "employee" or whose services are not included in the definition of "employment" or who is otherwise excluded or exempted from the operation of this chapter, the acceptance of such policy or contract of insurance by the insured and the writing of same by the carrier shall constitute a waiver of such exclusion or exemption and an acceptance of the provisions of this chapter with respect to such person, notwithstanding the provisions of s. 440.05 with respect to notice.

(Emphasis added.) The lack of a similar express statement in the NICA plan further supports our conclusion that notice under the plan was intended to serve as a condition precedent to immunity.
Moreover, our reading of NICA's notice provision will not frustrate the plan's goal of stabilizing the perceived medical malpractice insurance crisis affecting obstetricians by reducing their malpractice insurance premiums. Florida Birth-Related Neurological Injury Compensation Ass'n v. McKaughan, 668 So.2d 974 (Fla.1996); § 766.301(1), Fla. Stat. (1993). Under our reading of the statute, in order to preserve their immune status, NICA participants who are in a position to notify their patients of their participation a reasonable time before delivery simply need to give the notice in a timely manner. In those cases where it is not practicable to notify the patient prior to delivery, pre-delivery notice will not be required.
Whether a health care provider was in a position to give a patient pre-delivery notice of participation and whether notice was given a reasonable time before delivery will depend on the circumstances of each case and therefore must be determined on a case-by-case basis. Because the assertion of NICA exclusivity is an affirmative defense, factual disputes concerning notice should be submitted to the jury where a jury trial is requested on all questions of fact. Cf. McKaughan, 668 So.2d 974 (Fla.1996) (assertion of NICA's exclusivity of remedy is an affirmative defense); Central Fla. Regional Hosp., Inc. v. Wager, 656 So.2d 491, 492 (Fla. 5th DCA 1995) (where plaintiff requested that a jury resolve all questions of fact, issue of whether injury was covered by NICA plan was question of fact to be resolved by the jury), approved, 672 So.2d 34 (Fla.1996).
Accordingly, we answer the certified question as explained herein and approve the decision under review.
It is so ordered.
SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON, J., dissents with an opinion, in which GRIMES, J., concurs.
OVERTON, Justice, dissenting.
I dissent. The majority has added words to Florida's Birth-Related Neurological Injury Compensation Plan (NICA) to make the notice requirement "a condition precedent when practicable." If the legislature had intended to make this notice requirement a condition precedent to treatment and delivery, it could have done so just as it has done in other instances. NICA is similar to the *312 workers' compensation law, and the notice requirement under that law is much the same as the notice requirement at issue. In workers' compensation, the notice requirement is not a condition precedent.
The majority opinion states that "the purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies." Majority op. at 309-310. The majority, however, does not make the notice requirement a condition precedent in every case. Instead, the opinion provides that "a NICA participant must give a patient notice of the `no-fault alternative for birth-related neurological injuries' a reasonable time prior to delivery, when practicable." Id. at 310 (emphasis added). I fail to see how the statute can be interpreted in this manner or how physicians and hospitals will understand what constitutes proper notice under this standard.
The "when practicable" language has been used by the majority to confront the unanswered practical problems inherent in the requirement that notice be applied as a condition precedent. At oral argument, counsel for Braniff had difficulty explaining at what stage of a patient's pregnancy a physician is required to provide notice. For instance, what, if any, notice is a physician required to give to a birthing mother who is brought into the hospital just as the baby is being born? Likewise, when is a hospital required to provide notice under similar circumstances? The latter circumstance is especially troublesome given that a hospital frequently has its first contact with a pregnant woman when birth is imminent. The majority leaves these questions open for a jury as to what constitutes "practicable." If the doctor or hospital has no alternative malpractice coverage for neurological injuries because each thinks that they have adequately complied with the statute, then there is no insurance to pay for the defense while this issue of whether notice could practicably be given is decided. I am concerned that doctors will be reluctant to accept and treat new patients in potentially emergency situations because they could be subjected to a malpractice action for which they may have no coverage. At a minimum, the majority should provide more guidance as to when it is not "practicable" to give the required notice.
In my view, the majority has added substantive words to the statute when there is no justification to do so. I find the reasoning and analysis of Judge Klein's dissenting opinion in Bradford v. Florida Birth-Related Neurological Injury Compensation Association to be particularly compelling in this regard. 667 So.2d 401, 402-403 (Fla. 4th DCA 1995)(Klein, J., dissenting). His dissenting opinion, which I adopt in full, reads as follows:
The very first provision of NICA, section 766.301, Florida Statute (1993) provides:
(1) The Legislature makes the following findings:
(a) Physicians practicing obstetrics are high-risk medical specialists for whom malpractice insurance premiums are very costly, and recent increases in such premiums have been greater for such physicians than for other physicians.
(b) Any birth other than a normal birth frequently leads to a claim against the attending physician; consequently, such physicians are among the physicians most severely affected by current medical malpractice problems.
(c) Because obstetric services are essential, it is incumbent upon the Legislature to provide a plan designed to result in the stabilization and reduction of malpractice insurance premiums for providers of such services in Florida.
(d) The costs of birth-related neurological injury claims are particularly high and warrant the establishment of a limited system of compensation irrespective of fault.
(2) It is the intent of the Legislature to provide compensation, in a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation. This plan shall apply only to birthrelated neurological injuries.

*313 The notice provision, section 766.316, Fla. Stat. (1993), which is found at the end of the act, provides:
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan.
My reading of NICA is that the legislature intended the act to apply to all physicians who joined, and did not intend to make it conditional on whether notice was given. If the legislature had intended to make notice a condition precedent, it would have expressly said so, as it has done on other occasions. See e.g., Levine v. Dade County School Bd., 442 So.2d 210 (Fla. 1983)(§ 768.28(6) plaintiff must give notice of a claim against the state within 3 years); Ingersoll v. Hoffman, 589 So.2d 223 (Fla. 1991) (plaintiff must give notice to defendant prior to filing claim for medical malpractice); Stresscon v. Madiedo, 581 So.2d 158 (Fla.1991) (lienor must comply with owner's request for written statement within 30 days).
Although the parties have not cited it, I find a Florida Supreme Court decision involving the notice requirement in our worker's compensation law analogous here. In Allen v. Estate of Carman, 281 So.2d 317 (Fla.1973), an employer with fewer than three employees was not required to have worker's compensation coverage, but did obtain it. He did not, however, post the notice required by § 440.05, Florida Statutes (1967):
Every employer who ... waives such exemption ... shall post and keep in a conspicuous place or places in and about his place or places of business typewritten or printed notices to such effect in accordance with a form to be prescribed by the commission. He shall file a duplicate of such notice with the commission.
In rejecting the claimant's position that the lack of notice waived worker's compensation immunity, the court concluded that "the critical act contemplated by the statute to secure to employer and employee the benefits thereunder is the purchase and acceptance of the policy, not the posting of notice." Id. at 322. There is a striking similarity between NICA and our worker's compensation law, since in both the legislature took away a common law right to sue and provided an administrative remedy for compensation without fault.
In the definitions portion, section 766.302(7), Florida Statutes (1993) provides:
"Participating physician" means a physician licensed in Florida to practice medicine who practices obstetrics or performs obstetrical services either full time or part time and who had paid or was exempted from payment at the time of the injury the assessment required for participation in the birth-related neurological injury compensation plan for the year in which the injury occurred. Such term shall not apply to any physician who practices medicine as an officer, employee, or agent of the Federal Government.
Physicians reading the above definition would, in my opinion, conclude that if they elected to participate, they would unconditionally become part of this no-fault compensation plan and would no longer have to maintain malpractice insurance coverage for babies suffering brain or spinal cord injuries during birth. Making the giving of notice a condition precedent, where the legislature did not say it is a requirement, may leave these obstetricians without insurance coverage for a civil malpractice suit because they thought, relying on the statute, that they did not need it.

When our legislature intends to make a statutory provision a condition precedent, it explicitly says so and explains how and *314 when. For example, in the notice before filing provision of our present medical malpractice law, section 766.106(2), Florida Statutes (1993), it is provided that after presuit investigation, and prior to filing a claim for medical malpractice, a claimant must notify prospective defendants by certified mail, return receipt requested. It further specifies exactly what information must be contained in the notice. The statute in the present case contains no provision as to when the notice is to be given, and only a general statementan explanation of patient's rights and limitationsof what must be in the notice. Construing the statute to require notice as a condition precedent will, I am concerned, cause these cases to turn on swearing matches as to whether notice was received, and will also result in litigation as to whether the form of notice, if received, was sufficient.
The interpretation of the majority makes me wonder what happens if it is in the best interest of the patient to proceed through NICA, because there is no negligence, but the physician is a participant in NICA who gave no notice? Does the patient have the option to waive the lack of notice and obtain benefits under NICA? Or could the physician take the position that NICA was inapplicable because he or she gave notice, and leave the patient, who cannot prove negligence, with no remedy.
I am not unsympathetic to the view that if prospective patients were notified that the physician was participating in NICA, the patient might well seek treatment elsewhere. The fact remains, however, that the statute does not say notice is a condition precedent.
In Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla.1963), our supreme court explained:
Courts are, of course, extremely reluctant to add words to a statute as enacted by the Legislature. They should be extremely cautious in doing so. The recognized rule, however, is that when a word has obviously been omitted and the context of the act otherwise reflects the clear and unequivocal legislative intent, then this intent may be effectuated by supplying the word or words which have been inadvertently omitted. The courts cannot and should not undertake to supply words purposely omitted. When there is doubt as to the legislative intent or where speculation is necessary, then the doubts should be resolved against the power of the courts to supply missing words. On the other hand, when the addition of a word is necessary to prevent an act from being absurd and in order to conform the statute to the obvious intent of the Legislature, then words which were clearly omitted through some clerical or scrivener's misprision may be added by the court. (Emphasis added.)
Making the notice provision in the statute a condition precedent is not necessary to keep the act from being absurd, nor is it necessary to carry out the legislature's intent. I therefore dissent.
Bradford, 667 So.2d at 402-403 (emphasis added).
For the reasons expressed in Judge Klein's dissenting opinion, I would quash the decision of the district court of appeal.
GRIMES, J., concurs.
NOTES
[1] The Task Force obviously believed that because not all health care providers are required to participate in the NICA plan, fairness requires that the patient be made aware that she has limited her common law remedies by choosing a participating provider.
[2] The Task Force also must have recognized that failure to require notice would open the plan up to constitutional attack. For example, the Braniffs argue that if pre-delivery notice is not a condition precedent to immunity under the plan, patients will be deprived of their common law remedies without due process. However, because of our resolution of the notice issue, we need not reach the merit of this procedural due process challenge.
[3] The notice requirement at issue in Allen provided in pertinent part:

Every employer who ... waives such exemption... shall post and keep posted in a conspicuous place or places in and about his place or places of business typewritten or printed notices to such effect in accordance with a form to be prescribed by the commission. He shall file a duplicate of such notice with the commission.
Allen, 281 So.2d at 322 (quoting § 440.05, Fla. Stat. (1967)).
[4] The current version of the "Waiver of Exemption" provision is identical to the version at issue in Allen.