920 So.2d 781 (2006)
NORTHWEST MEDICAL CENTER, INC. and Alison Clarke De Souza, M.D., Appellants,
v.
Yvette ORTIZ, Erick Alberto Ortiz, and Florida Birth-Related Neurological Injury Compensation Association, Appellees.
No. 4D04-2028.
District Court of Appeal of Florida, Fourth District.
February 15, 2006.
*782 Debra Potter Klauber of Haliczer, Pettis & Schwamm, P.A., Fort Lauderdale, for appellant Northwest Medical Center.
Esther E. Galicia of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Lauderdale, for appellant Alison Clarke De Souza, M.D.
Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, Scott M. Sandler of Law Office of Scott M. Sandler, Coconut Grove, and Robert J. Bryan of Robert J. Bryan, P.A., Miami, for appellees Ortiz.
Wilbur E. Brewton and Kelly B. Plante of Roetzel & Andress, L.P.A., Tallahassee, for appellee Florida Birth-Related Neurological Injury Compensation Association.

On Motion for Clarification
WARNER, J.
We grant appellant's motion for clarification, withdraw our prior opinion and substitute the following in its place.
Northwest Medical Center and Dr. Alison Clarke De Souza appeal an administrative order finding that appellee, Mrs. Ortiz, was not given notice of the Florida Birth-Related Neurological Injury Compensation Plan, as required by section 766.316, Florida Statutes (2000). They contend that because she was admitted in an emergency medical condition, notice was not required. However, we agree with the trial court that Northwest had an opportunity to give notice prior to Mrs. Ortiz's arrival at the hospital for delivery. By failing to give Mrs. Ortiz such notice when it had the opportunity to do so, Northwest failed to comply with the statute.
The Ortizes, individually and on behalf of their minor child, sued Northwest and Dr. De Souza for various counts of medical negligence during Mrs. Ortiz's labor, resulting in their child being born with brain damage. Northwest filed a motion to abate the action on the ground that the Ortizes were required to seek a remedy only under the Florida Birth-Related Neurological Injury Compensation Plan ("NICA"), sections 766.301 to 766.316, Florida Statutes. Such remedy is exclusive unless Mrs. Ortiz did not receive notice from the hospital regarding NICA in *783 accordance with section 766.316, Florida Statutes. See Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 309-10 (Fla.1997); Tabb v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 880 So.2d 1253, 1255 (Fla. 1st DCA 2004). The trial court abated the matter to permit an administrative law judge to determine the issue.
Thereafter, plaintiffs filed a petition in the Division of Administrative Hearings against the Florida Birth-Related Neurological Injury Compensation Association to determine whether their claim was compensable under NICA. They argued that the defendants failed to provide Mrs. Ortiz with notice in accordance with the act, thus failing to invoke NICA as plaintiffs' exclusive remedy. Northwest, Dr. Keane and Dr. De Souza intervened in the action.
An administrative hearing was held on the petition. Prior to the hearing, the parties stipulated that Dr. De Souza is not a participating physician in NICA. However, Dr. Moulton Keane, who was a participating physician, under the plan provided obstetrical care during her delivery. The Association also stipulated that the child's injury was compensable under NICA and the other parties agreed not to contest compensability of the injury.
At the hearing, Mrs. Ortiz testified that she chose Northwest for her delivery because her physician performed deliveries there. She pre-registered as a patient at Northwest on August 25, 2000, giving it pertinent pre-admission information. Northwest provided her with the Hospital's Conditions and Consent for Treatment form as well as an Advance Directives booklet and Northwest's Patient handbook. She signed for some of the materials. She was never told during pre-registration about NICA.
On December 17, 2000, around 6:00 p.m., Mrs. Ortiz went to the hospital because she was having soft contractions. Later she was given an I.V. and oxygen. Around two hours after admission, she was given forms to sign for the performance of a cesarean delivery. Not until 11:00 p.m. did the nurse give Mrs. Ortiz a NICA form to sign. She was not given a brochure about NICA. She said she did not know she was signing a form about NICA, believing it to relate to surgery or anesthesia. Shortly thereafter, a cesarean was performed as Mrs. Ortiz was in critical condition. The child was born brain-damaged.
The nurse attending Mrs. Ortiz did not speak Spanish and had difficulty communicating with Mrs. Ortiz, a Spanish speaker. While the nurse did witness Mrs. Ortiz signing the consent to anesthesia and surgery, she did not witness her signing the NICA form, nor does she remember giving her a NICA brochure which might have been in Spanish, if the hospital had them on hand, but the NICA consent form was not in Spanish. Nurses are not trained to answer questions regarding NICA and, therefore, do not do so. Instead they advise patients to call the 800 number on the brochure if they have questions about NICA.
The administrative law judge determined that although Mrs. Ortiz's admission on December 17, 2000 may have been considered an admission based upon an "emergency medical condition" where notice may not be required, Northwest had a reasonable opportunity to provide notice at the pre-registration, prior to her presentation to the hospital for delivery. Therefore it failed to comply with the notice provisions of the plan. Northwest and Dr. De Souza appeal this judgment.
The legislature passed NICA in order to help "stabiliz[e] and reduc[e] malpractice insurance premiums" faced by obstetricians. § 766.301(1)(c), Fla. Stat. (2000). *784 The plan provides "compensation, irrespective of fault, for birth-related neurological injury claims." § 766.303(1), Fla. Stat. (2000). "The rights and remedies granted by [the] plan ... shall exclude all other rights and remedies ... at common law or otherwise, against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury...." § 766.303(2), Fla. Stat. (2000).
"[A]s a condition precedent to invoking [NICA] as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery." Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 309 (Fla.1997). Section 766.316, Florida Statutes (2000), states:
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable.
The supreme court determined "[t]his language makes clear that the purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies." Braniff, 696 So.2d at 309-10 (citing Turner v. Hubrich, 656 So.2d 970, 971 (Fla. 5th DCA 1995)).
Under our reading of the statute, in order to preserve their immune status, NICA participants who are in a position to notify their patients of their participation a reasonable time before delivery simply need to give the notice in a timely manner. In those cases where it is not practicable to notify the patient prior to delivery, pre-delivery notice will not be required.
Id. at 311. The court also determined that "[w]hether a health care provider was in a position to give a patient pre-delivery notice of participation and whether notice was given a reasonable time before delivery will depend on the circumstances of each case and therefore must be determined on a case-by-case basis." Id.
Northwest contends that the statute does not require that notice be given at the first available opportunity or at any time prior to when the mother arrives at the hospital for delivery. It cites the provision of section 766.316 which states, "Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable." Because Mrs. Ortiz arrived at the hospital in an emergency medical condition, it claims it was not required to give her notice at that time. Thus, Northwest argues that the *785 trial court erred in concluding that Northwest should have provided Mrs. Ortiz with notice when she pre-registered at the hospital. We disagree.
In Board of Regents v. Athey, 694 So.2d 46, 50-51 (Fla. 1st DCA 1997), in a non-emergency admission situation, the court held "that health care providers who have a reasonable opportunity to give notice and fail to give predelivery notice under section 766.316, will lose their NICA exclusivity regardless of whether the circumstances precluded the patient making an effective choice of provider at the time the notice was provided." There, the health care providers argued that, although notice was not given of NICA participation, the patient's ability to make an informed choice was not caused by the lack of notice but by the lack of other health care providers available to treat Medicaid patients with medical complications. The court rejected that reasoning, noting that "[w]eeks prior to these obstetrical patients presenting for delivery, UMC performed prenatal ultrasound procedures for these patients and had knowledge that these patients would deliver their babies at UMC. In addition, at the time these patients presented for delivery, UMC had the opportunity to obtain other written consents, but failed to provide the NICA notice." Id. at 51. Thus, the court looked to a time prior to when the patients actually arrived at the hospital for delivery to determine whether the NICA participants had a reasonable opportunity to provide notice.
Admittedly, Athey did not involve an admission for an emergency medical condition. However, the court's reasoning hinges on the hospital's knowledge of the patient long before presentation for delivery. Similarly, Northwest knew that Mrs. Ortiz intended to deliver her child there months before her actual admission. At that time she was given substantial information regarding her medical care at the hospital and she signed several consent forms. If the purpose of the notice requirement is to give the patient the choice to choose a NICA protected delivery or not, hospitals should give notice at a time where such choice can still be made. By waiting until an emergency arises, the hospital is depriving the patient of this choice. Therefore, by failing to give notice of NICA participation a reasonable time prior to delivery, although able to do so, Northwest lost the protection of NICA, and the Ortizes are entitled to pursue their civil remedies.
Northwest's argument that notice given by the administrative staff at the time of inpatient admission would not be as effective as that given by its labor and delivery nurse, as is its current policy, is completely without merit on this record. Those nurses are not trained on NICA and do not answer the patients' questions about it. When questioned, nurses refer patients to the 800 number printed on the NICA form. What patient in the midst of labor is going to take the time to call an 800 number to question the hospital's NICA participation?
We note express conflict with Orlando Regional Healthcare System, Inc. v. Alexander, 909 So.2d 582 (Fla. 5th DCA 2005), which held under similar facts that the statutory exception to NICA notice where a patient is admitted with an emergency medical condition was not negated by prior hospital visits by the patient. We do not read the statutory provision exempting notice in an emergency situation as covering those cases where the hospital has pre-admitted a patient for the very medical condition for which she is subsequently admitted in an emergency condition. We note that the third district has also disagreed with Alexander. See Univ. of Miami *786 v. Ruiz, 916 So.2d 865 (Fla. 3rd DCA 2005).
Northwest also argues that even if it could have given an earlier notice, it satisfied the statutory notice provision by informing Mrs. Ortiz about NICA on the day she was admitted to the hospital. The Ortizes maintain this notice was ineffective because it was not given in time for Mrs. Ortiz to make an informed choice. It is clear from the administrative law judge's findings and the evidence presented that notice was not given to Mrs. Ortiz until a time when she would have been unable to act on the information. Because the purpose of the notice is "to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies," see Braniff, 696 So.2d at 309-10, the notice was ineffective in this case.
For the foregoing reasons, we affirm the order of the administrative law judge. Our affirmance renders the last issue raised by Dr. De Souza moot.
GUNTHER and HAZOURI, JJ., concur.