ANSTEAD, J.,
dissenting.
I would approve the thorough and well-reasoned opinion of Judge Canady for the unanimous panel of Second District Court of Appeal judges in the decision below. In my view, the majority has ignored the conceptual differences between administrative proceedings structured to determine NICA claims versus the entirely distinct judicial proceedings for malpractice claims in which the exclusivity provisions of NICA may be invoked as an affirmative defense. In doing so, the majority has failed to adhere to this Court’s prior controlling decision in Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla.1997).
Because I find Judge Canady’s opinion compelling, I adopt it as my own. Further, I set out here that portion of the opinion that I believe so clearly distinguishes the function of administrative proceedings under NICA (as those functions existed under the controlling law to be applied at the time of the underlying events involved in the Second District’s *720 ruling) from the function of judicial proceedings. Judge Canady explains:
C. The Limits of ALJ Jurisdiction Under NICA
In the instant case, the ALJ did something NICA gave him no authority to do and failed to do what the statute required him to do. There is no basis in NICA for the ALJ’s foray into the issue of immunity from tort liability under section 766.303(2) and the related issue of notice under section 766.316. And there is no justification under NICA for the ALJ’s failure to make a determination concerning the compensability of the injury which is the subject of the underlying claim.
The responsibilities of the ALJ are succinctly set forth in section 766.309. The ALJ must address the two basic questions which determine if a claim is compensable under the plan: (1) “[wjhether the injury claimed is a birth-related neurological injury,” § 766.309(l)(a); and (2) “[wjhether obstetrical services were delivered by a [covered person] in the course of labor, delivery, or resuscitation in the immediate post-delivery period in a hospital,” § 766.309(l)(b). If both of these questions are answered in the affirmative, the injury is compensable under the plan. If either question is answered in the negative, the injury is not compensa-ble. Since the adoption of the 1998 amendments, NICA is very clear that the determination of whether an injury is compensable is exclusively within the province of the ALJ, see § 766.304, Fla. Stat. (Supp.1998) — subject, of course, to the right to pursue an appeal of the ALJ’s determination, see § 766.311, Fla. Stat. (1997).
The issue of immunity from tort liability and the related issue of notice are an entirely different matter. There is nothing in section 766.309 or elsewhere in NICA that gives the ALJ any responsibility or authority to determine either (a) that notice under section 766.316 was or was not properly given, or (b) that a provider is or is not entitled to invoke the immunity from tort liability provided for in section 766.303(2). These issues are entirely distinct and separate from the issue of compensability under the plan.
The issue of notice is only relevant to the issue of whether a provider is eligible under section 766.303(2) for immunity from tort liability. See Galen, 696 So.2d at 309-11. Thus, the provision of notice has no bearing whatsoever on whether a claim is compensable. The availability of compensation under the plan is alike available to claimants who received proper notice under section 766.316 and to claimants who did not receive such notice. See, e.g., O’Leary v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 757 So.2d 624, 627 (Fla. 5th DCA 2000) (“recognizing] that lack of proper notice does not affect a claimant’s ability to obtain compensation from the [pjlan”). A claimant cannot be deprived of compensation under the plan due to the failure of a provider to give the required notice. See id.
Nothing in the 1998 amendments to NICA did anything to extend the jurisdiction of the ALJ to the issues of notice and immunity from tort liability. Insofar as those amendments addressed the issue of the jurisdiction of the ALJ, they simply made clear that — contrary to the holding in McKaughan — the ALJ “has exclusive jurisdiction to determine whether a claim filed under [NICA] is compensable.” § 766.304. The 1998 amendments also established that “[n]o civil action may be brought until the determinations [regarding compensability] under s. 766.309 have been made by *721 the [ALJ].” Id. No change was made in the determinations the ALJ is required to make under section 766.309.
In cases such as the instant one, where the potential claimant wishes to pursue tort remedies and to forgo any compensation from the plan, the task of the ALJ is limited to determining whether the injuries were compensable under section 766.309(1), and thus “covered by [NICA],” in accord with section 766.301(l)(d) (Supp.1998). In cases where the claimant seeks compensation from the plan, once an injury is determined to be compensable, the ALJ must go on to determine the amount of compensation that is awardable. See §§ 766.309(l)(c), .31.
If the ALJ determines that a claim is not compensable under NICA, there can, of course, be no immunity from liability under section 766.303(2). If the ALJ determines that a claim is compen-sable but the potential claimant desires to forgo compensation under NICA and to pursue a civil action for tort remedies, a determination must then be made concerning whether that civil action is “in violation of the exclusiveness of remedy provisions of s. 766.303.” § 766.304. That determination concerning tort immunity will turn on whether proper notice was given as required by section 766.316. Galen, 696 So.2d at 311 (stating that propriety of provider’s NICA notice must be determined on a “case-by-case basis[,] [b]ecause the assertion of NICA exclusivity is an affirmative defense [in a civil suit and] factual disputes concerning notice should be submitted to the [trier of fact]”).
The factual and legal issues related to notice and tort immunity are within the jurisdiction of the circuit court in which a tort claim is brought. They are not within the jurisdiction of the ALJ. Those issues are entirely irrelevant to the determination the ALJ must make concerning whether compensation is available from the association for a particular claim. It is the circuit court which must address those issues in deciding whether a civil action will be allowed to proceed in the circuit court. It, therefore, was error for the ALJ in the instant case to determine that the notice given was insufficient and that All Children’s was not entitled to immunity from tort liability.
The ALJ further erred in requiring the claimants to make an “election of remedies.” See Bayfront Med. Ctr., Inc. v. Div. of Admin. Hearings, 841 So.2d 626, 628 (Fla. 2d DCA 2003) (reversing ALJ’s “rulings regarding the election of remedies and the finding regarding [NICA’s] exclusivity of remedy provisions”); cf. Gugelmin, 815 So.2d at 768 (reversing administrative order of ALJ “requiring [claimants] to elect between remedies and denying the hospital statutory immunity despite its timely notice under the [p]lan”). Finally, the ALJ’s errors of addressing the issues of notice, immunity, and election of remedies led him into the error of failing to carry out his responsibility to determine whether the injury was compensable under NICA.
We realize that in O’Leary the Fifth District held that the adequacy of a provider’s notice is part of a compensability determination and that notice is thus a matter within the exclusive province of the ALJ. 757 So.2d at 626-28. The O’Leary court observed that its “conclusion that the administrative forum is the intended exclusive forum to determine the notice question eliminates the ‘ping-pong effect,’ that is, the trial court and the [ALJ] each throwing the case back to the other on this question.” Id. at 627. For the reasons already stated, *722 however, we conclude that the text of NICA does not support the conclusion reached by the Fifth District in O’Leary that the question of proper notice is part of the compensability determination the ALJ is required to make. Insofar as the supposed “ ‘ping-pong effect’ ” is concerned, we simply note that we are constrained to follow the ball wherever the legislature chooses to send it.
All Children’s Hospital, Inc. v. Dept of Admin. Hearings, 863 So.2d 450, 455-57 (Fla. 2d DCA 2004).
LEWIS, C.J., concurs.