974 So.2d 1096 (2007)
FLORIDA HEALTH SCIENCES CENTER, INC., d/b/a Tampa General Hospital and The Florida Board of Regents, Appellants,
v.
DIVISION OF ADMINISTRATIVE HEARINGS and Sandra Nap Britt and Frank Britt, on behalf of and as natural guardians of David Britt, Appellees.
Florida Birth-Related Neurological Injury Compensation Association, Appellant,
v.
Sandra Nap Britt and Frank Britt, as parents and natural guardians of David Britt, a minor, Appellees.
District Court of Appeal of Florida, Second District.
December 19, 2007.
Rehearing Denied February 29, 2008.
*1097 David S. Nelson of Barr, Murman, Tonelli, Slother & Sleet, Tampa, for Appellant Florida Health Sciences Center, Inc.
Michael N. Brown and Patricia E. Davenport of Allen Dell, P.A., Tampa, for Appellant The Florida Board of Regents.
Wilbur E. Brewton and Kelly B. Plante of Brewton, Plante & Plante, P.A., Tallahassee; and Kenneth J. Plante of Roetzel & Andress, L.P.A., Tallahassee, for Appellant Florida Birth-Related Neurological Injury Compensation Association.
Tricia B. Valles, Roland J. Lamb, and William E. Hahn of Hahn, Morgan & Lamb & Lamb, P.A., Tampa; and James B. Tilghman, Jr., and Gary D. Fox of Stewart Tilghman Fox & Bianchi, P.A., Miami, for Appellees.

ON REMAND FROM THE SUPREME COURT OF FLORIDA
DAVIS, Judge.
In these consolidated appeals, Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital (TGH), and the Florida Board of Regents (FBOR) together with the Florida Birth-Related Neurological Injury *1098 Compensation Association (NICA) challenge the final order entered by an administrative law judge (ALJ) on August 14, 2001, by which the ALJ determined that the physician who delivered David Britt, and who was a participating physician in the Florida Birth-Related Neurological Injury Compensation Plan (the Plan),[1] failed to provide sufficient notice to avail the physician and other healthcare providers involved in the delivery of the Plan's immunity from civil suit.
Previously this court determined that the ALJ lacked jurisdiction under the Plan to determine whether the statutorily required notice[2] had been provided and whether the immunity and exclusivity provisions of the Plan were available to the health care providers. See Fla. Health Scis. Ctr., Inc. v. Div. of Admin. Hearings, 871 So.2d 1062 (Fla. 2d DCA 2004). However, in Florida Birth-Related Neurological Injury Compensation Ass'n v. Division of Administrative Hearings, 955 So.2d 529 (Fla.2007), the Florida Supreme Court quashed our decision and remanded this matter to this court for further consideration. In doing so, the supreme court quoted from its opinion in Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Division of Administrative Hearings, 948 So.2d 705, 707 (Fla. 2007), as follows: "`[W]hen notice is raised as part of a claim filed under [the Plan], an ALJ has jurisdiction to make findings regarding whether a healthcare provider has satisfied the "notice to obstetrical patients" requirement of section 766.316, Florida Statutes (Supp.1998).'" 955 So.2d at 530. With the Florida Supreme Court having determined that the ALJ had the jurisdiction to determine whether the notice required by the Plan had been provided, we now review the ALJ's conclusion that the notice provided to Mrs. Britt by the physician who delivered her son David was not sufficient to satisfy the statutory notice requirements of the Plan.
Sandra and Frank Britt's son David suffered serious neurological injuries at birth. As a result, the Britts filed a medical malpractice action against TGH, the hospital where the child was delivered, and FBOR, the employer of the University of South Florida faculty physician who delivered the child. In response, TGH and FBOR raised the exclusivity of the Plan benefits[3] as an affirmative defense, and the trial court abated the civil action to allow the Britts to file a NICA Plan petition. In their petition, the Britts alleged that although the injuries complained of were compensable under the Plan and the delivering physician was a participant in the Plan, the immunity provided by the Plan to the physician and the other healthcare providers involved in the delivery did not apply because the physician failed to provide sufficient notice to the Britts of her participation in the Plan.
*1099 The testimony presented at the evidentiary hearing showed that Sandra Britt was provided with a copy of the NICA Plan brochure informing her of the Plan. An employee of the clinic where the delivering physician provided prenatal care to Mrs. Britt[4] testified that it was her normal practice to verbally advise patients that the physicians at the clinic were participants in the Plan. However, Sandra Britt testified that she was never verbally advised of that information, explaining that she may have left the clinic before the employee gave the advisement to the patients present that day. The ALJ's final order made the factual finding that Sandra Britt did receive the brochure from both the clinic (on behalf of the physician) and the hospital but that "the proof fails to support the conclusion that Mrs. Britt was ever provided notice that her physicians were participants in the Plan." The ALJ then concluded that the burden rested on the healthcare providers to show that the statutory notice requirement had been met.
Based on the Florida Supreme Court's decision in Galen of Florida v. Braniff, 696 So.2d 308 (Fla.1997), the ALJ found that
where, as here, notice was not given by the participating physician, the claimants may accept compensation under the Plan (thereby foreclosing the filing or continuation of a civil suit against the participating physician, hospital or other involved with the labor or delivery) or reject the Plan benefits and pursue their common law remedies.
The final order then concluded that "absent timely rejection of this award by the Claimants," NICA should make the specified payments to the Britts. The Britts immediately filed their notice of rejection of the award. With this rejection, the final order served as a final determination that although the injuries were compensable and the physician was a participating physician, the exclusivity and immunity provisions of the Plan were not available to the physician and the Britts were not legally precluded from pursing their medical malpractice claim. It is this final order that we now review.
Appellants challenge the final order with two arguments. First, they argue that the ALJ improperly shifted the burden of proof. That is, the ALJ required that the healthcare providers show that sufficient notice had been given when it was the Britts' petition that was being considered. They argue that the ALJ should have required the Britts to show that sufficient notice was not given.
We disagree. The applicability of the immunity/exclusivity provisions of the Plan are properly raised as affirmative defenses in the civil malpractice claim. The trial court, pursuant to O'Leary v. Florida Birth-Related Neurological Injury Compensation Ass'n, 757 So.2d 624 (Fla. 5th DCA 2000) (holding that the proper forum for determining the compensability under the Plan is the administrative proceeding), stayed the civil action to allow the Britts to file their petition to determine whether the Plan applied to these injuries. In the administrative forum, the Britts alleged that although the injuries were compensable, notice was deficient and that thus the immunity and exclusivity provisions did not apply. Because it was the healthcare providers who sought the affirmative application of these provisions, the burden rested on them to show that the statutory requirements were *1100 met. See Balino v. Dep't of Health & Rehabilitative Servs., 348 So.2d 349, 350 (Fla. 1st DCA 1977) ("[T]he burden of proof, apart from statute, is on the party asserting the affirmative of an issue before an administrative tribunal."). Furthermore, even if the Britts did have the burden to show that there was no notice of the physician's participation in the Plan, the testimony in the record supports the ALJ's conclusion that Sandra Britt did not receive more than the general brochure from the physician.
Appellants also argue that the ALJ erred in applying Galen, 696 So.2d 308, to the facts of this case. Again, we disagree. We acknowledge that the issue before the Galen court was the timing of the notice, not the sufficiency. In that case, the delivering physician did not give the required notice until after the child was born. However, the supreme court concluded that even though the statute does not specifically spell out when the notice must be given, because the purpose of the notice provision was to allow a patient to choose to engage the services of a nonparticipating physician and thus preserve her rights to access the civil courts in a malpractice action should the need arise, the notice requirement was meaningless unless it also required that the notice be given prior to delivery to allow the patient the option of exercising such a choice. Id. at 309. In coming to this conclusion, the court stated, "[A]s a condition precedent to invoking the Florida Birth-Related Neurological Injury Compensation Plan as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery." Id.
The Galen analysis of the purpose of the statute's notice provision is also applicable to the question of the sufficiency of notice. Applying Galen to the instant case, if the notice given Sandra Britt is to meet the intent of the statute, it would be necessary to notify her that her doctor was, in fact, a participant. The brochures that she received from the clinic on behalf of the physician and from TGH only explained the existence of the Plan and that it would be applicable to her if her physician was a Plan participant. Without further notification that her physician was indeed a Plan participant, Mrs. Britt would be unaware that she needed to choose either to continue care with her current physician  thus accepting the Plan's coverage  or seek the services of a nonparticipating physician  thereby reserving any rights she may have to pursue a civil action. In Galen, the Florida Supreme Court specifically qualified the notice that satisfies the intent of the statute as notice of participation. Accordingly, we agree with the ALJ that notice of the Plan as provided by the brochure, even though it may comply with the literal wording of the notice statute,[5] is not sufficient to meet the statute's intent. To read the statute in such a way as to not include the notice of participation would result in a statutory interpretation requiring a meaningless act that fails to accomplish the purpose of the notice requirement.
However, because we recognize that this decision applies the Galen reasoning to a issue different than the one considered by the Galen court, and because our decision holds that the physician's compliance with the literal reading of the statutory requirement is legally insufficient, we certify the *1101 following question as one of great public interest and importance:
In light of the reasoning of Galen of Florida v. Braniff, 696 So.2d 308 (Fla. 1997), is a physician's notification to his patient of the existence of the NICA Plan as described by the brochure provided by NICA without notifying the patient that the physician is a participating physician sufficient to invoke the immunity and exclusivity provisions of the NICA Plan?
Affirmed.
STRINGER[6] and SILBERMAN, JJ., Concur.
NOTES
[1] §§ 766.301-.316, Fla. Stat. (1997).
[2] See § 766.316 ("Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c) . . . shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries.").
[3] See § 766.303(2) ("The rights and remedies granted by this [P]lan on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, her or his personal representative, parents, dependents, and next of kin . . . against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury. . . ." (emphasis added)).
[4] TGH operates the clinic and provides its administrative staff; however, physician services at the clinic are provided by University of South Florida faculty physicians and interns.
[5] Section 766.316 provides in part that the statutorily-required notice "shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the [P]lan."
[6] Judge Stringer has been substituted for Judge Covington, who was on the original panel.