503 So.2d 925 (1987)
ARNOLD LUMBER COMPANY and R.P. Hewitt & Associates, Appellants,
v.
Verner E. HARRIS, Appellee.
No. BH-317.
District Court of Appeal of Florida, First District.
February 16, 1987.
Rehearing Denied March 27, 1987.
*926 Thomas J. Maida of Karl, McConnaughay, Roland, Maida & Beal, P.A., Tallahassee, for appellants.
James E. McKenzie of McKenzie & Associates, P.A., Pensacola, for appellee.
SMITH, Judge.
The employer/carrier appeal an order awarding claimant permanent total and temporary total disability benefits, attorney's fees, and payment of Dr. Batson's medical bills. They appeal and the claimant cross-appeals that portion of the deputy's order reducing claimant's compensation rate by five percent (5%) because of a preexisting impairment caused by claimant's arthritis, in accordance with this court's decision in Escambia County Council v. Goldsmith, 465 So.2d 655 (Fla. 1st DCA 1985) (Goldsmith I). We affirm in part, reverse in part, and remand for further proceedings.
The deputy's award of permanent total and temporary total disability benefits is supported by competent, substantial evidence. As stated many times by this court, we will not retry the claim at the appellate level and substitute our judgment for that of the deputy on factual issues supported by competent, substantial evidence. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983).
The deputy ordered that Dr. Batson's medical bills be paid by the employer/carrier since claimant was referred to Dr. Batson by Dr. Owens, who was authorized; and even if Dr. Owens was not authorized, claimant had been referred to him in the chain of medical care. On appeal, for the first time, the employer/carrier contend that there were two doctors named "Dr. Owens" in this case, one an M.D., who was authorized, and the other, a chiropractor, who was not authorized. Accordingly, they argue that the referral by Dr. Owens, the chiropractor, to Dr. Batson was not authorized. This issue cannot be raised for the first time on appeal. Acosta Roofing Co. v. Gillyard, 402 So.2d 1321 (Fla. 1st DCA 1981). Moreover, the record before the deputy supports his conclusion that Dr. Owens, the chiropractor, was authorized. Since an authorized chiropractor referred claimant to Dr. Batson for treatment, the employer/carrier are responsible for Dr. Batson's bill. Sloan v. Concrete Sciences, 382 So.2d 411 (Fla. 1st DCA 1980).
The award of attorney's fees under section 440.34(3)(c), Florida Statutes *927 (Supp. 1980), was correct. This statute provides for an award of attorney's fees where the employer/carrier deny that an injury occurred for which compensation benefits are payable, and the claimant prevails on the issue of compensability. The employer/carrier paid medical benefits only and refused to pay any compensation or disability benefits. Payment of medical benefits does not constitute the payment of compensation. § 440.02(11), Fla. Stat. (Supp. 1980). Here, the claimant was forced to prove the compensable nature of his injury and his entitlement to compensation for wage loss and temporary total and permanent total disability benefits. See Dolphin Tire Company v. Ellison, 402 So.2d 36 (Fla. 1st DCA 1981) (claimant was entitled to attorney's fees where it was apparent that claimant suffered a catastrophic injury, that carrier denied that such a catastrophic loss had occurred for which compensation benefits were payable but did admit a compensable injury had occurred and claimant prevailed in obtaining catastrophic loss benefits). Florida Welding & Erection Service v. Martin, 417 So.2d 1166 (Fla. 1st DCA 1982), relied upon by the employer/carrier, is distinguishable. Although the opinion is unclear, the briefs in that case[1] reveal that the employer/carrier had paid temporary total disability benefits for a period. Therefore this court concluded that section 440.34(3)(c) was not applicable since the E/C had not denied that an injury occurred for which compensation benefits were payable.
Finally, Dr. Batson gave claimant a fifteen percent (15%) permanent partial impairment rating according to the AMA Guides, and he causally related claimant's condition to his industrial accident. He felt that claimant's 1981 back injury was super-imposed upon a preexisting arthritic condition, which condition accounted for 5% of the claimant's overall 15% impairment. Dr. Batson testified that claimant's condition prevented him from returning to work in his pre-accident employment as a pulpwood worker. He agreed that claimant's back condition was so severe that claimant should lie down three times per day. The deputy accepted Dr. Batson's testimony and went on to find that claimant was permanently totally disabled, on the grounds that he could not return to manual labor, and that his lack of education made him ill-suited for most sedentary work. Even if the claimant could find a sedentary job, the deputy noted that he could not put in a full day's work since an employer would have to permit him to lie down on the job three times a day.
In Goldsmith I, this court held that apportionment should be applied to permanent total disability benefits by apportioning out of the award "the portion of the permanent impairment which would have existed without the accident." 465 So.2d at 657. In accordance with Goldsmith I, the deputy determined that only five percent (5%) should be apportioned out of claimant's permanent total disability award. However, the employer/carrier argue that since one-third of claimant's permanent impairment was due to a preexisting condition, that the deputy should have reduced the permanent total disability award by one-third, not five percent (5%).
On the other hand, the claimant argues that this court misinterpreted the workers' compensation act in Goldsmith I, and that apportionment is limited to "death benefits" and "permanent impairment." "Permanent impairment" is specifically defined in the act and is clearly associated with the benefits payable for certain impairments under section 440.15(3), Florida Statutes. Since the claimant in this case, and the claimant in Goldsmith I, were awarded disability benefits and no impairment benefits, claimant argues that the apportionment provisions were improperly applied to them.
In Escambia County Council v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986) (Goldsmith II), an appeal after remand of Goldsmith I, this court held that permanent total disability benefits remain subject to apportionment consistent with the statutory construction and principles enunciated in Evans v. Florida Industrial Commission, *928 196 So.2d 748 (Fla. 1967). Accordingly, the court also held, Goldsmith's permanent total disability was not subject to apportionment because his permanent impairment due to the preexisting condition had not been shown to have been disabling within the third category stated in Evans.
As in Goldsmith II, apportionment in this case is governed by Chapter 440, Florida Statutes (1979), and the holding in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967). Upon remand, the deputy may determine, if the evidence already presented warrants it, that claimant's permanent total disability is not subject to apportionment because his permanent impairment due to the pre-existing condition has not been shown to be disabling as explained in the cited cases. If necessary, the deputy may receive and consider further evidence in order to determine this issue. Accordingly, this case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion and the opinion in Goldsmith II.
REVERSED and REMANDED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] This court may take judicial notice of its own records. Hillsborough County Board of County Commissioners v. Public Employees Relations Commission, 424 So.2d 132 (Fla. 1st DCA 1982).