909 So.2d 582 (2005)
ORLANDO REGIONAL HEALTHCARE SYSTEM, INC., et al., Appellants/Cross-Appellees,
v.
Dajuanda ALEXANDER, etc., et al., Appellee/Cross-Appellants.
Nos. 5D04-802, 5D04-2904.
District Court of Appeal of Florida, Fifth District.
September 2, 2005.
*583 Richard L. Allen, Jr., and Daniel M. Eisel of Mateer & Harbert, P.A., Orlando, for Appellant/Cross-Appellee Orlando Regional Healthcare System, Inc.
Wilbur E. Brewton, General Counsel, Kelly B. Plante and Tana D. Storey of Roetzel & Andress, L.P.A., Tallahassee, for Appellant/Cross-Appellee Florida Birth-Related Neurological Injury Compensation Association.
Ronald S. Gilbert and David V. Barszcz of Colling, Gilbert & Wright, Maitland, for Appellees/Cross-Appellants.
*584 PALMER, J.
This consolidated appeal arises from administrative proceedings involving a claim under Florida's Birth-Related Neurological Injury Compensation Act (NICA). Specifically, Orlando Regional Healthcare System (ORHS) appeals the administrative law judge's (ALJ) order on compensability and notice. Dajuanda Alexander (the newborn's mother) has filed a cross-appeal also challenging the ALJ's order on compensability and notice. Concluding that the ALJ's ruling that ORHS was not exempted from providing pre-delivery notice was error, we reverse that portion of the ALJ's order. In all other respects, we affirm the ALJ's order.
We begin by briefly summarizing the relevant law. NICA provides an exclusive remedy in the form of compensation for certain statutorily-defined birth-related neurological injuries on a no-fault basis. Section 766.301 of the Florida Statutes articulates the Legislature's intent behind enacting NICA:
766.301. Legislative findings and intent
* * * * * *
(2) It is the intent of the Legislature to provide compensation, on a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation. This plan shall apply only to birth-related neurological injuries.
§ 766.301(2), Fla. Stat. (2003)(emphasis added). The term "birth-related neurological injuries" is defined as follows:
766.302. Definitions; ss. 766.301-766.316
As used in ss. 766.301-766.316, the term:
* * * * * *
(2) "Birth-related neurological injury" means injury to the brain or spinal cord of a live infant weighing at least 2,500 grams for a single gestation or, in the case of a multiple gestation, a live infant weighing at least 2,000 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired. This definition shall apply to live births only and shall not include disability or death caused by genetic or congenital abnormality.
§ 766.302(2), Fla. Stat. (2003). Section 766.304 outlines the exclusive nature of NICA's relief:
766.304. Administrative law judge to determine claims
The administrative law judge shall hear and determine all claims filed pursuant to ss. 766.301-766.316 and shall exercise the full power and authority granted to her or him in chapter 120, as necessary, to carry out the purposes of such sections. The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensable. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge. If the administrative law judge determines that the claimant is entitled to compensation from the association, or if the claimant accepts an award issued under s. 766.31, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303. If it is determined that a claim filed under this act is not compensable, neither the doctrine of collateral estoppel nor res judicata shall prohibit the claimant from pursuing any and all civil remedies available *585 under common law and statutory law.
§ 766.304, Fla. Stat. (2003).
Of particular importance to the instant appeal, NICA requires that healthcare providers demonstrate that they gave pre-delivery notice to their obstetrical patients of their participation in the NICA plan as a condition precedent to invoking NICA's exclusive remedy provision. The purpose of the pre-delivery notice requirement is to allow the patient to make an informed choice between hiring a healthcare provider who participates in the NICA plan and hiring one who does not. Importantly, a healthcare provider's failure to provide a patient with the statutory notice generally precludes application of NICA's exclusive administrative remedy provision, thereby entitling such patients to proceed with medical malpractice actions against the healthcare provider for injuries arising from birth-related neurological injuries. Exceptions to this general rule exist only in instances when the patient has an emergency medical condition or when notice is not practicable. Section 766.316 of the Florida Statutes outlines the notice requirement as follows:
766.316. Notice to obstetrical patients of participation in the plan
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable.
§ 766.316, Fla. Stat. (2003)(emphasis added).
The instant litigation began when Dajuanda Alexander, individually as well as in her capacity as the mother of Elliott Davis, filed a petition with the Division of Administrative Hearings (DOAH) against the Florida Birth-Related Neurological Injury Compensation Association (the Association) seeking a determination of "non-entitlement to NICA benefits." The petition explained that although Elliott (who was born in July 1999 at ORHS) suffered brain damage at the time of his birth[1], his injuries were not covered by NICA because his injuries were a result of medical negligence occurring at a time "before the presentation in labor and ultimate delivery," and because his prenatal care was provided by Dr. Jerome Adams, a non-participating physician.
DOAH served the Association with a copy of Alexander's petition. Upon review, the Association gave notice that it had determined that the claim was outside the parameters of NICA. The Association also requested an administrative hearing before an ALJ. ORHS and Dr. Adams *586 filed a motion seeking to intervene in the proceedings before the ALJ, and both were granted intervenor status.
After an evidentiary hearing was conducted, the ALJ found that Elliott's injuries were birth-related neurological injuries under the terms of NICA. The ALJ further held that, while it was undisputed that Alexander had not received the statutorily-mandated pre-delivery notice from either her treating physicians (i.e., the hospital's emergency medical staff) or ORHS, the treating physicians were exempted from the statutory notice requirement because Alexander had been treated for an "emergency medical condition." See § 766.316, Fla. Stat. (2003). However, the ALJ further concluded that ORHS was not exempted from giving Alexander pre-delivery notice because, prior to the day Alexander arrived at the hospital and delivered her baby under emergency circumstances, she had made three previous visits to the hospital with concerns about her pregnancy and during said visits she was not provided with the statutory notice. The ALJ concluded that notice should have been given to Alexander by ORHS during one of her three previous visits and that ORHS's failure to do so was in violation of NICA, regardless of the fact that eventually Alexander delivered under emergency conditions.
An ALJ's interpretation of NICA is reviewed by this court de novo. Nagy v. Florida Birth-Related Neurological Injury Comp. Ass'n, 813 So.2d 155 (Fla. 4th DCA 2002). Applying de novo review, we hold that the ALJ erred, as a matter of law, in failing to enforce the clear language of section 766.316, NICA's notice statute. To that end, the statute states specifically that "notice need not be given to a patient when the patient has an emergency medical condition ... or when notice is not practicable." The ALJ misapplied the law as expressed in the clear language of the statute by interpreting the statute to require both (1) a finding of an emergency medical condition, and (2) a finding that the provision of notice was not practicable. We hold that the statute contains two distinct exceptions, each of which independently provides an exception to the pre-delivery notice requirement. As such, ORHS was excused from providing notice to Alexander when she arrived at the ORHS under emergency conditions, and her previous visits to the hospital during her pregnancy did not negate this clear statutory exemption.
On cross-appeal, Alexander challenges the ALJ's ruling of compensability, arguing that the ruling should be reversed because she provided sufficient competent evidence to demonstrate that Elliott's injuries did not occur during labor, delivery or resuscitation. We disagree.
The ALJ recognized that, pursuant to section 766.309(1)(a) of the Florida Statutes, once it is established that a newborn suffered an injury to the brain caused by oxygen deprivation that rendered the child permanently and substantially mentally and physically impaired, then a rebuttable presumption arises that the injury is a "birth-related neurological injury" which is covered under NICA. In concluding that the presumption had not been rebutted, the ALJ wrote:
18. The medical records and the testimony of the physicians and other witnesses offered by the parties have been carefully considered. So considered, it must be concluded that there was insufficient credible evidence to resolve that Ms. Alexander was not in labor following the abruption and prior to delivery, or that the oxygen deprivation Elliott suffered during the course of delivery and resuscitation, before an effective cardiac output and adequate oxygenation were restored, did not contribute significantly to his brain injury.

*587 19. In so concluding, it is noted that the credible proof demonstrates that Elliott's brain injury was caused by oxygen deprivation, secondary to placental abruption (that was initially partial, and at some unknown point complete); that such deprivation started at some time following the abruption (when fetal reserves were lost, and the baby's ability to compensate for the blood loss failed) and continued until he was resuscitated, following delivery; and that, given the record in this case, one cannot reliably resolve on that time line when (whether immediately following the onset of the abruption or at some other definitive point through resuscitation) hypoxia of a sufficient magnitude occurred to account for the severe brain injury Elliott suffered.
20. Moreover, with regard to the issue of labor, the medical records are limited in scope, given the emergent nature of Ms. Alexander's presentation, and insufficient to support a conclusion that Ms. Alexander was not in labor, at the time of placental abruption or thereafter. Notably, the brief fetal monitoring which occurred following Ms. Alexander's arrival at the hospital was insufficient to demonstrate that she was or was not in labor, that the titanic contraction she suffered precluded regular uterine contractions, and that a cervical examination was not performed. Consequently, any failure of the medical records to document the onset of regular uterine contractions, with progressive dilation and effacement of the cervix, does not provide compelling proof that Ms. Alexander was not in active labor, and any opinion that Ms. Alexander was not in active labor, based on the absence of clinical evidence in the records, is inadequate to rebut the presumption established by section 766.309(1)(a), Florida Statutes.
An ALJ's findings of fact are only reversible on appeal when they are not supported by competent substantial evidence in the record. Nagy v. Florida Birth-Related Neurological Injury Comp. Ass'n, 813 So.2d 155 (Fla. 4th DCA 2002). Here, the record supports the ALJ's findings.
Alexander also argues that the statutory presumption set forth in section 766.309(1)(a) is unconstitutional, both on its face and as applied to her. We disagree.
In her "as applied" challenge, Alexander claims that she presented sufficient evidence to overcome the statutory presumption, and therefore, it was unconstitutional for the ALJ to apply the presumption against her in this case. For the reasons set forth above with regard to the sufficiency of the evidence, we reject this argument as meritless.
As for her "on its face" challenge, Alexander claims that sections 766.309 and 766.302 of the Florida Statutes are unconstitutional because the statutes contain vague terms, specifically citing to the terms "labor", "substantial impairment", and "permanent injury".
"The test to determine whether a statute is unconstitutionally vague is whether people of common understanding and intelligence must necessarily guess at its meaning." Beverly Enterprises-Florida, Inc., v. McVey, 739 So.2d 646, 648 (Fla. 2d DCA 1999). A statute is unconstitutionally vague
if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and is written in a manner that encourages or permits arbitrary or discriminatory enforcement. However, imprecise language does not render a statute fatally vague, so long as the language "conveys *588 sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." [People v. Foley, 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123, 130 (2000)]. And if a reasonable and practical construction can be given to the language of a statute, or its terms made reasonably certain by reference to other definable sources, it will not be held void for vagueness.
Cashatt v. State, 873 So.2d 430, 435 (Fla. 1st DCA 2004).
The terms "labor", "substantial impairment", and "permanent injury", as set forth in the NICA statutes are not so vague as to permit the ALJ to "guess" at their meaning. Rather, these terms are certain enough that a reasonable and practical construction can be given to the language by reference to other definable sources, such as medical literature. As such, the statutes are not unconstitutional on their faces.
AFFIRMED in part, REVERSED in part.
PETERSON and ORFINGER, JJ., concur.
NOTES
[1] The ALJ noted that Elliott has been described as being in a chronic vegetative state, with severe spastic quadriplegia.