977 So.2d 616 (2008)
Bethany WEEKS, as Personal, etc., Appellant,
v.
FLORIDA BIRTH-RELATED NEUROLOGICAL, etc., et al, Appellees.
No. 5D05-4119.
District Court of Appeal of Florida, Fifth District.
January 31, 2008.
Rehearing Denied April 2, 2008.
*617 Philip M. Burlington of Burlington & Rockenbach, P.A., and David J. White of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, for Appellant.
Wilbur E. Brewton and Kelly B. Plante of Roetzel & Andress, L.P.A., Tallahassee, for Appellee Florida Birth-Related Neurological Injury Compensation Association.
Henry W. Jewett, II, and Jennings L. Hurt, III, of Rissman, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellee/Intervenor Orlando Regional Healthcare System, Inc., d/b/a South Seminole Hospital.
Thomas E. Dukes, III, and Ruth C. Osborne of McEwan, Martinez & Dukes, P.A., Orlando, for Appellees/Intervenors Christopher K. Quinsey, M.D. and Advanced Women's Health Specialists.
EN BANC
TORPY, J.
We once again confront the topic of statutory notice to patients under the Florida Birth-Related Neurological Injury *618 Compensation Plan (NICA).[1] The particular question is whether health care providers may invoke the "emergency medical condition" exception to the notice precondition, even though the provider-obstetrical patient relationship had commenced before the onset of the emergency. We conclude that the notice must be given within a reasonable time after the commencement of the relationship and that the failure to do so is not excused by the subsequent emergency. In so holding, we must necessarily recede, in part, from our prior decision in Orlando Regional Healthcare System, Inc. v. Alexander, 909 So.2d 582 (Fla. 5th DCA 2005).
Following the death of David Weeks from birth-related neurological injuries, his mother, Bethany Weeks, as personal representative, filed her petition for compensation under the NICA plan and asked for a determination of whether the health care providers had complied with the notice requirements of NICA. Appellee, Florida Birth-Related Neurological Injury Compensation Association, responded that it believed the claim was compensable and sought a hearing for a determination of compensability and on the disputed issue of pre-delivery notice. In the interim, Orlando Regional Healthcare System, Inc., d/b/a South Seminole Hospital, Christopher Quinsey, M.D., David Goss, M.D., John V. Parker, M.D., and Advanced Women's Health Specialists were granted leave to intervene.
The Administrative Law Judge's order contains extensive findings of fact that are unchallenged on appeal. In material part, the ALJ found that Mrs. Weeks had received prenatal care from Advanced, an obstetrical group of which the delivering doctor, Dr. Quinsey, was a member, but she had not been given pre-delivery notice that its physicians participated in the NICA plan. As for the hospital, the ALJ noted in the order that Mrs. Weeks had pre-registered at the hospital and was actually admitted for prenatal care from October 15 to October 19 and again from October 25 to October 27. Nevertheless, the hospital had not provided Mrs. Weeks with a NICA form for her signature until less than two hours before David's birth on November 3, 2002. The ALJ found that it would have been practicable for the hospital to have delivered the NICA notice during preregistration or during the prenatal admissions. As to Dr. Quinsey, the ALJ specifically found that it would have been practicable to have delivered the notice on any one of Mrs. Weeks's visits to the clinic. The ALJ concluded, however, that the providers were excused from complying with the notice requirement because Mrs. Weeks was in an "emergency medical condition" when she reached the hospital the day David was delivered. In arriving at this conclusion, the ALJ understandably relied on this Court's opinion in Alexander.
Our resolution of this issue is based on the language of the statute. Section 766.316, Florida Statutes (2002), provides in pertinent part:
Notice to obstetrical patients of participation in the plan.  Each hospital with a participating physician on its staff and each participating physician, . . . under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. . . . Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable.
(Emphasis added).
What this emphasized language clearly expresses to us is that the formation *619 of the provider-obstetrical patient relationship is what triggers the obligation to furnish the notice. The determination of when this relationship commences is a question of fact. Once the relationship commences, because the statute is silent on the time period within which notice must be furnished, under well-established principles of statutory construction, the law implies that the notice must be given within a reasonable time. Burnsed v. Seaboard Coastline R. Co., 290 So.2d 13, 19 (Fla.1974); Concerned Citizens of Putnam County v. St. Johns River Water Mgmt. Dist, 622 So.2d 520, 523 (Fla. 5th DCA 1993). This determination depends upon the circumstances, but a central consideration should be whether the patient received the notice in sufficient time to make a meaningful choice of whether to select another provider prior to delivery, which is a primary purpose of the notice requirement. Turner v. Hubrich, 656 So.2d 970, 971 (Fla. 5th DCA 1995).
In Alexander, our attention was directed to the last sentence of the statute, which contains the two statutory exceptions to the rule  "emergency medical condition" and "practicability." We based our holding on our conclusion that these exceptions were independent, as evidenced by the use of the conjunction "or" instead of "and." Although we continue in our belief that these two exceptions are independent, focusing now on the rule rather than the exceptions, it is clear that Alexander was wrongly decided. Were we to follow Alexander's construction of the statute, we would be permitting the exception to completely swallow the rule because "emergency medical condition," as defined, includes virtually every labor and delivery.[2] Such a construction violates a cardinal principle of statutory construction that it "never be presumed that the legislature intended to enact purposeless and therefore useless, legislation." Sharer v. Hotel Corp. of Am., 144 So.2d 813, 817 (Fla. 1962). Our conclusion in Alexander also ignores the mandatory language of the statute, requiring that providers "shall provide notice to obstetrical patients," thus violating the statutory construction maxim that "all words in a statute . . . be construed so as to give them some effect, not so as to render them meaningless surplusage." Fla. Police Benev. Ass'n, Inc. v. Dep't of Agric. & Consumer Servs., 574 So.2d 120, 122 (Fla.1991). We think that the construction we adopt today gives both purpose to the statute and effect to all of its words. For these reasons, we recede from Alexander to the extent that it holds to the contrary.
Here, under the undisputed facts, Mrs. Weeks clearly became an "obstetrical patient" of both providers well before her delivery, thus triggering the obligation to furnish her with the notice within a reasonable time, which was not excused by the subsequent emergency. Because the notice was not timely furnished, neither provider may invoke the benefits of NICA. Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla.1997).
In summary, we hold that the NICA notice must be given within a reasonable time after the provider-obstetrical patient relationship begins, unless the occasion of the commencement of the relationship *620 involves a patient who presents in an "emergency medical condition," as defined by the statute, or unless the provision of notice is otherwise "not practicable." When the patient first becomes an "obstetrical patient" of the provider and what constitutes a "reasonable time" are issues of fact. As a result, conclusions might vary, even where similar situations are presented. For this reason, a prudent provider should furnish the notice at the first opportunity and err on the side of caution.[3]
We certify the following question to the Florida Supreme Court as one involving great public importance:
WHEN A NICA PROVIDER FAILS TO PROVIDE THE STATUTORY NOTICE TO AN OBSTETRICAL PATIENT WITHIN A REASONABLE TIME AFTER THE COMMENCEMENT OF THE PROVIDER-OBSTETRICAL PATIENT RELATIONSHIP, IS THE PROVISION OF THE NOTICE EXCUSED BECAUSE THE PATIENT SUBSEQUENTLY PRESENTS IN AN "EMERGENCY MEDICAL CONDITION."
REVERSED; QUESTION CERTIFIED.
PALMER, C.J., GRIFFIN, THOMPSON, PLEUS, ORFINGER, MONACO, LAWSON and EVANDER, JJ., concur.
SAWAYA, J., concurs in result, with opinion.
SAWAYA, J., concurring in result.
I am unable to fully concur in the majority opinion, and I am setting out below an *621 opinion that I previously proposed. I believe my proposed opinion sets forth the correct legal issue to be resolved and, by application of Florida Supreme Court precedent, properly analyzes the legal issue before us.
A majority of the judges on this court have decided to consider this case en banc to resolve the following issue: whether a hospital and physician, who are participants in the Florida Birth-Related Neurological Injury Compensation Plan[1] (NICA), are excused from compliance with the notice requirements of section 766.316, Florida Statutes (2002), because the mother presented to the hospital and physician for delivery in an emergency medical condition, despite the fact that the mother had previously preregistered at the hospital and had been admitted on at least two occasions for prenatal care and despite the fact that she had previously sought prenatal care at a clinic of which the delivering physician was a member. We have decided that under these circumstances, the hospital and physician are not excused from the statutory notice requirement, and in so holding, we must necessarily recede from our prior decision in Orlando Regional Healthcare System, Inc. v. Alexander, 909 So.2d 582 (Fla. 5th DCA 2005).
Bethany Weeks, as personal representative of the estate of her deceased infant son, David Weeks, appeals the administrative law judge's (ALJ) order finding that the health care providers were excused from giving her the statutorily required notice of their participation in NICA because Mrs. Weeks had presented herself to the hospital in an emergency medical condition. The attending physician, Dr. Quinsey; his medical group, Advanced Women's Health Specialists (AWHS); and the hospital where the infant was delivered, Orlando Regional Healthcare System, Inc., d/b/a South Seminole Hospital, have filed answer briefs as Appellees/Intervenors.[2] The named appellee is Florida Birth-Related Neurological Injury Compensation Association. The ALJ adjudicated the notice issue only as to the hospital and Dr. Quinsey, and we will confine our decision to resolution of the issue of NICA notice to those two parties.
Almost two years following the November 2002 death of David Weeks from birth-related neurological injuries, Mrs. Weeks filed her petition for compensation under NICA and asked for a determination of whether the health care providers had complied with the notice requirements of NICA. Florida Birth-Related Neurological Injury Compensation Association responded that it believed the claim was compensable and sought a hearing for a determination of compensability and on the disputed issue of pre-delivery notice. In the interim, the motions filed by the intervenors seeking leave of the court to participate in the proceedings were granted.
A detailed discussion of the facts surrounding the birth and death of David is *622 not necessary to resolve the issue before us. Suffice it to say that the ALJ noted in the order under review that Mrs. Weeks preregistered at the hospital in October 2002 and was actually admitted for prenatal care on at least two separate occasions prior to the date she delivered.[3] Mrs. Weeks was not provided the required NICA notice on any of these occasions. Mrs. Weeks testified that she also received prenatal care from AWHS during several visits and did not, during any of those visits, receive notice that its physicians participated in NICA. One of those physicians was Dr. Quinsey. As to Dr. Quinsey, the ALJ specifically found that it would have been practicable to have delivered the notice on any one of Mrs. Weeks' visits to the clinic and, as to the hospital, the ALJ found that it would have been practicable to deliver the NICA notice during preregistration or during the prenatal admissions.
The hospital contends that it did not provide Mrs. Weeks with notice during preregistration or the prior prenatal admissions because it has a policy of providing notice only when a patient presents for delivery. Here, Mrs. Weeks presented to the hospital on November 3, 2002, at 8:15 p.m. and gave birth to David at 11:00 p.m. The hospital contends that in compliance with its policy, it did provide Mrs. Weeks with a NICA form for her signature shortly after her arrival at the hospital. Although Mrs. Weeks had signed the form, she denied ever having been given the NICA brochure, which purportedly contained the required notice. The ALJ did not resolve whether the brochure containing the notice had actually been provided to Mrs. Weeks because the ALJ found that even though it would have been practicable for the hospital to have given Mrs. Weeks the NICA notice at preregistration and during her prior prenatal admissions, the hospital, like the doctor, was excused from the notice requirement because Mrs. Weeks presented to the hospital under emergency medical conditions to deliver David.
In arriving at this conclusion, the ALJ relied on this court's opinion in Orlando Regional Healthcare System, Inc. v. Alexander, 909 So.2d 582 (Fla. 5th DCA 2005). In Alexander, the ALJ determined that even though the mother had arrived at the hospital in an emergency condition, the hospital was not excused from giving the notice because the mother had, on three prior occasions, come to the hospital with "concerns about her pregnancy." Id. at 586. Having reviewed our records in Alexander, as is appropriate for us to do,[4] we take judicial notice of the fact that those three pre-delivery visits to the hospital did not concern an "emergency medical condition" as referenced in section 766.316 and defined by section 395.002(9)(b), Florida Statutes (2002). In fact, the *623 record reveals that two visits to the hospital lasted several hours, and during the other visit, the mother was actually admitted to the hospital for overnight observation of her pregnancy. The ALJ concluded that notice should have been given at one of these prior visits, regardless of the fact that the mother eventually arrived at the hospital in an emergency medical condition, and that the failure to give notice was a violation of NICA. Alexander, 909 So.2d at 586. This court held that the ALJ was wrong as a matter of law:
Applying de novo review, we hold that the ALJ erred, as a matter of law, in failing to enforce the clear language of section 766.316, NICA's notice statute. To that end, the statute states specifically that "notice need not be given to a patient when the patient has an emergency medical condition . . . or when notice is not practicable." The ALJ misapplied the law as expressed in the clear language of the statute by interpreting the statute to require both (1) a finding of an emergency medical condition, and (2) a finding that the provision of notice was not practicable. We hold that the statute contains two distinct exceptions, each of which independently provides an exception to the pre-delivery notice requirement. As such, ORHS was excused from providing notice to Alexander when she arrived at the ORHS under emergency conditions, and her previous visits to the hospital during her pregnancy did not negate this clear statutory exemption.

Id. The holding in Alexander is clear  regardless of prior practicable opportunities to provide the notice, such as pre-delivery visits or admissions for nonemergency prenatal care or preregistration, because section 766.316 contains two distinct exceptions that independently provide an exception to the notice requirement, presenting to the hospital with an emergency medical condition under the statute is all that is necessary to trigger the exception provision.
Mrs. Weeks argues that Alexander is wrongly decided. She contends that although she arrived at the hospital in an emergency medical condition, there had been ample opportunities for the hospital, during her preregistration and the prenatal admissions, and the doctor, during her previous visits to AWHS, to provide her with the requisite notice. Thus, she asks that this court reverse the ALJ's order and recede from our holding in Alexander based on the decisions in Northwest Medical Center, Inc. v. Ortiz, 920 So.2d 781 (Fla. 4th DCA 2006) (noting express conflict with Alexander), review denied, 966 So.2d 967 (Fla.2007), and University of Miami v. Ruiz, 916 So.2d 865 (Fla. 3d DCA 2005) (certifying conflict with Alexander). These cases hold, contrary to Alexander, that a hospital or physician is not excused from the notice requirements when they had practicable opportunities prior to the onset of the medical emergency to provide the notice.
Our analysis of the pertinent notice requirements and the exception provisions found in section 766.316, Florida Statutes (2002),[5] leads us to conclude that Mrs. Weeks is right. Section 766.316 provides:
Notice to obstetrical patients of participation in the plan

*624 Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable.
Because NICA provides the exclusive remedy to those seeking compensation for certain statutorily defined birth-related neurological injuries on a no-fault basis, participants in NICA are required to provide the pre-delivery notice mandated by section 766.316 to their obstetrical patients to give each patient the opportunity to make an informed choice between seeking care from a hospital or physician who participates in the NICA plan and a hospital or physician that does not. Jackson v. Fla. Birth-Related Neurological, 932 So.2d 1125 (Fla. 5th DCA 2006); Ruiz. Compliance with the notice requirement is a condition precedent to hospitals and participating physicians invoking the exclusivity provisions of NICA. Jackson; Ruiz. Therefore, if a NICA participant fails to comply with the notice provisions, the patient will be entitled to seek damages arising out of the birth for birth-related neurological injuries pursuant to Florida's Medical Malpractice Act found in chapter 766, Florida Statutes. Jackson; Ruiz.

Central to the decisions in Alexander, Ruiz, and Ortiz, and central to resolution of the issue in the instant case, are the provisions of section 766.316 that specify when notice is excused: "Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable." § 766.316, Fla. Stat. (2002). Because section 766.316 expressly adopts the definition of "emergency medical condition" set forth in section 395.002(9)(b), it is appropriate to consider the provisions of the latter statute in ascertaining the meaning of the exemption provisions in the former. See Forsythe v. Longboat Key Beach Erosion Control Dist, 604 So.2d 452, 454 (Fla.1992) (holding that pertinent statutes should be read together and considered in pari materia in determining the meaning of a statute and legislative intent). Section 395.002(9)(b), Florida Statutes (2002),[6] defines "emergency medical condition," as that term is used with respect to a pregnant woman, as meaning:
1. That there is inadequate time to effect safe transfer to another hospital prior to delivery;

*625 2. That a transfer may pose a threat to the health and safety of the patient or fetus; or
3. That there is evidence of the onset and persistence of uterine contractions or rupture of the membranes.
We believe that subsection three of this statute defines emergency medical condition to mean that any time a woman goes into labor and presents for delivery, she presents with an emergency medical condition. According to this court's decision in Alexander, the onset of labor and the delivery of any child therefore excuses compliance with the notice requirement regardless of the fact that the NICA participant had practicable opportunities prior to delivery to provide the notice. We believe that the holding in Alexander vitiates the pertinent provisions of section 766.316 because it allows the exception to completely swallow the rule requiring notice. This cannot be what the Legislature meant when it enacted section 766.316.
The test to determine when notice is required under the statute is practicability, see section 766.316, Florida Statutes (2002), and this means that if a NICA participant has a reasonable opportunity to provide the required notice within a reasonable time prior to the onset of the statutorily defined emergency medical condition to allow the patient to make the necessary informed choice, then the notice must be given. This test comports with the purpose of the NICA notice and with precedent from the Florida Supreme Court, this court, and other district courts. In Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla.1997), the court held:
We agree with the district courts that the only logical reading of the statute is that before an obstetrical patient's remedy is limited by the NICA plan, the patient must be given pre-delivery notice of the health care provider's participation in the plan. Section 766.316 requires that obstetrical patients be given notice "as to the limited no-fault alternative for birth-related neurological injuries." That notice must "include a clear and concise explanation of a patient's rights and limitations under the plan." § 766.316. This language makes clear that the purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies. Turner v. Hubrich, 656 So.2d 970, 971 (Fla. 5th DCA 1995). In order, to effectuate this purpose a NICA participant must give a patient notice of the "no-fault alternative for birth-related neurological injuries" a reasonable time prior to delivery, when practicable.

Id. at 309-10 (emphasis added); see also Univ. Med. Ctr., Inc. v. Athey, 699 So.2d 1350, 1350 (Fla.1997) (holding that the notice must be given a "`reasonable time prior to delivery.'" (quoting Galen, 696 So.2d at 309)); Domond v. Mills, 696 So.2d 314, 315 (Fla.1997) (same); Ortiz, 920 So.2d at 785 (following a quotation from Galen, the court held, "If the purpose of the notice requirement is to give the patient the choice to choose a NICA protected delivery or not, hospitals should give notice at a time where such choice can still be made. By waiting until an emergency arises, the hospital is depriving the patient of this choice. Therefore, by failing to give notice of NICA participation a reasonable time prior to delivery, although able to do so, Northwest lost the protection of NICA, and the Ortizes are entitled to pursue *626 their civil remedies."); Ruiz, 916 So.2d at 870 ("[W]e find that, if a reasonable opportunity existed to provide notice prior to the onset of the emergency medical condition, the participating health care providers' failure to do so will not be excused and the participating health care providers will lose their NICA Plan exclusivity.") (emphasis added). In Jackson, this court specifically held that as a condition precedent to invoking the exclusivity provisions of NICA, pre-delivery notice must given to the patient and cited Galen as holding that "NICA patients must be given pre-delivery notice of physician's participation in NICA within a reasonable time period prior to delivery, when practical. . . ." 932 So.2d at 1129 (emphasis added).[7]
Here, Mrs. Weeks preregistered at the hospital and was admitted at least two times for non-emergency prenatal care. We conclude that any one of these occasions presented the hospital with a practicable opportunity to comply with the notice requirement a reasonable time prior to the onset of Mrs. Weeks' emergency medical condition. See Ortiz; Ruiz. Therefore, we do not believe that the hospital should be excused because nature took its inevitable course when Mrs. Weeks subsequently went into labor and delivered David.
As to the delivering physician, Dr. Quinsey, he was a member of AWHS where Mrs. Weeks received prenatal care during several visits prior to her delivery of David. Like the hospital, Dr. Quinsey had a reasonable opportunity during any one of those visits to give the required notice a reasonable time prior to Mrs. Weeks' presentment to the hospital in labor.
Appellees present the argument that the notice requirement was complied with because Mrs. Weeks was provided with notice when she presented for delivery. Mrs. Weeks contests that assertion. When Mrs. Weeks arrived at the hospital to deliver David, she presented with a statutorily defined emergency medical condition because she was in labor. Mrs. Weeks contends that even if she were presented with a NICA brochure containing the required notice as Appellees argue, it was less than an opportune time for her to read it "while she was having contractions, in pain, receiving lactate ringers, and while labs were being drawn." We agree with Mrs. Weeks that this certainly would not have been efficacious notice. We conclude that even if notice had been given to Mrs. Weeks at that time, it would not have complied with the requirement that notice be given a reasonable time prior to the onset of the emergency medical condition to allow the mother to make an informed choice between a NICA participant and a non-participant. Ortiz; Ruiz. We pose a rhetorical question similar to that asked by the court in Ortiz: What mother in the throes of labor will take the time or even be able to make the effort to read a NICA notice and then shop around for a non-participating *627 hospital or physician to deliver her baby?
Accordingly, we recede from our prior decision in Alexander, mindful, of course, that the panel that decided Alexander believed that section 766.316 is unambiguous and, according to certain rules of statutory construction, must be given a literal interpretation. Based on that analysis, we understand how and why the panel members in Alexander arrived at the holding and conclusion that they did. We, on the other hand, have grappled with discerning the meaning of what we consider to be a poorly worded and ambiguous statute. But even if we were to conclude, like the panel in Alexander, that the statute is unambiguous, we would nevertheless be directed to the same conclusion we reach today by other venerable rules of statutory construction, which are explained in Maddox v. State, 923 So.2d 442 (Fla. 2006):
Turning to these principles, we note that we have previously held that "[i]t is a fundamental principle of statutory construction that where a statute is plain and unambiguous there is no occasion for judicial interpretation." Golf Channel v. Jenkins, 752 So.2d 561, 564 (Fla.2000) (alteration in the original) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist, 604 So.2d 452, 454 (Fla.1992)). However, this Court has
also stated that related statutory provisions should be read together to determine legislative intent, so that "if from a view of the whole law, or from other laws in pari materia the evident intent is different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail, for that, in fact is the will of the Legislature."

Id. (quoting Forsythe, 604 So.2d at 454); see also McGhee v. Volusia County, 679 So.2d 729, 730 n. 1 (Fla. 1996) ("The doctrine of in pari materia requires the courts to construe related statutes together so that they illuminate each other and are harmonized."). Moreover, "a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984).

Id. at 445-46; see also Pavolini v. Bird, 769 So.2d 410, 414 (Fla. 5th DCA 2000) ("We must interpret and apply the [Medical Malpractice] Act to avoid an absurd result and to bring symmetry to all of the pertinent provisions of the Act relating to pre-suit notice and investigation."), review denied, 790 So.2d 1102 (Fla.2001). Applying these rules of statutory construction, we believe that the interpretation of section 766.316 we adopt today more accurately comports with legislative intent.
Because the hospital and physician failed to provide Mrs. Weeks with the required notice under section 766.316, they should not be entitled to seek shelter under the statute's exclusion provisions. Therefore, we reverse the administrative order under review so that Mrs. Weeks may pursue appropriate tort remedies for damages as she sees fit. We certify the following question to the Florida Supreme Court as a matter of great public importance:
WHETHER A HOSPITAL OR PHYSICIAN IS EXCUSED FROM COMPLYING WITH THE NOTICE REQUIREMENT OF SECTION 766.316 WHEN AN OBSTETRICAL PATIENT PRESENTS TO THE HOSPITAL OR *628 PHYSICIAN WITH A MEDICAL EMERGENCY CONDITION, IF THE HOSPITAL OR PHYSICIAN HAD A PRIOR PRACTICABLE OPPORTUNITY TO PROVIDE THE NOTICE.
REVERSED.
Having fully set forth my views, I feel it is important to briefly address the objection the majority has to my use of the term "practicability" in my proposed opinion. I thought that it would be readily apparent to the reader that I used that term to label the standard that was adopted by the Florida Supreme Court in Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla.1997), for determining when the NICA notice must be given. I specifically say so in footnote 7, stating, "Under the standard we apply, which we label practicability. . . ." That label adds nothing of substance to the legal analysis in the proposed opinion. Rather than focus on the label, I think it appropriate to focus on the meaning of the standard.
The only matter of substance that distinguishes my opinion from that of the majority is whether the standard to determine when the notice must be given adopted by the Florida Supreme Court in Galen and its progeny applies to the instant case. The majority thinks it is dicta. I disagree. I strongly believe the standard adopted in Galen is binding precedent that this court must apply. It is clear from reading Galen that the court explicitly intended to establish a legal standard to determine when the NICA notice must be given. Moreover, the court specifically held that compliance with the standard is a condition precedent, explaining, "Whether a health care provider was in a position to give a patient pre-delivery notice of participation and whether notice was given a reasonable time before delivery will depend on the circumstances of each case and therefore must be determined on a case-by-case basis." Galen, 696 So.2d at 311; see also University Med. Ctr., Inc. v. Athey, 699 So.2d 1350 (Fla.1997) ("In Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla. 1997), we answered the certified question by holding `that as a condition precedent to invoking the Florida Birth-Related Neurological Injury Compensation Plan as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery."); Domond v. Mills, 696 So.2d 314, 315 (Fla.1997) (same). The Second District Court has just rendered two cases explaining that the Galen standard was derived from extensive analysis of NICA. In Bayfront Medical Center, Inc. v. Florida Birth-Related Neurological Injury Compensation Ass'n, 33 Fla. L. Weekly D217, D218, ___ So.2d ___, ___, 2008 WL 140806 (Fla. 2d DCA Jan. 16, 2008), for example, the court explained:
The Supreme Court of Florida provided an extensive analysis of the Plan's notice requirement in Galen, 696 So.2d 308, which involved the timing of the notice. In that case, the healthcare providers, who had failed to provide the expectant mother with predelivery notice, argued that such was not required by the plain reading of the statute. After analyzing the purpose of the statutorily required notice, the supreme court came to the following conclusion: "This language makes clear that the purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies." Id. at 309-10. The court also observed that the "only logical reading of the statute" makes it clear that the notice must be given at such a *629 time that would allow the patient to either remain in the care of the participating physician or seek prenatal care from a nonparticipating physician. Id. at 309. The court concluded "that as a condition precedent to invoking the Florida Birth-Related Neurological Injury Compensation Plan as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery." Id.

In Florida Health Sciences Center, Inc. v. Division of Administrative Hearings, 974 So.2d 1096 (Fla. 2d DCA 2007), the court explained:
Appellants also argue that the ALJ erred in applying Galen, 696 So.2d 308, to the facts of this case. Again, we disagree. We acknowledge that the issue before the Galen court was the timing of the notice, not the sufficiency. In that case, the delivering physician did not give the required notice until after the child was born. However, the supreme court concluded that even though the statute does not specifically spell out when the notice must be given, because the purpose of the notice provision was to allow a patient to choose to engage the services of a nonparticipating physician and thus preserve her rights to access the civil courts in a malpractice action should the need arise, the notice requirement was meaningless unless it also required that the notice be given prior to delivery to allow the patient the option of exercising such a choice. Id. at 309. In coming to this conclusion, the court stated, "[A]s a condition precedent to invoking the Florida Birth-Related Neurological Injury Compensation Plan as a patient's exclusive remedy, health care providers must, when practicable, give their obstetrical patients notice of their participation in the plan a reasonable time prior to delivery." Id.

The Galen analysis of the purpose of the statute's notice provision is also applicable to the question of the sufficiency of notice.
I think it is erroneous for this court to declare as dicta a legal standard adopted by the Florida Supreme Court. Equally important, as I explain in my opinion, the Third and Fourth District Courts, in cases strikingly similar to the instant case and certifying conflict with Alexander, cite Galen and specifically apply the very standard this court considers dicta. Northwest Med. Ctr., Inc. v. Ortiz, 920 So.2d 781 (Fla. 4th DCA 2006), review denied 966 So.2d 967 (Fla.2007); University of Miami v. Ruiz, 916 So.2d 865 (Fla. 3d DCA 2005). This court has also previously applied the Galen standard. Jackson v. Florida Birth-Related Neurological, 932 So.2d 1125, 1129 (Fla. 5th DCA 2006) (holding specifically that as a condition precedent to invoking the exclusivity provisions of NICA, pre-delivery notice must given to the patient; citing Galen as holding that "NICA patients must be given pre-delivery notice of physician's participation in NICA within a reasonable time period prior to delivery, when practical. . . .") (emphasis added). I also note that very recently this court cited Galen as authority for providing pre-delivery notice. Dianderas v. Florida Birth Related Neurological 973 So.2d 523, 524 (Fla. 5th DCA 2007) ("Of significance to this appeal, NICA requires that participating hospitals and physicians give pre-delivery notice to obstetrical patients of their participation in NICA. See Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 309 (Fla.1997).").
The only other justification for not applying the Galen standard offered by the majority is its assertion that the standard the majority adopts is more workable because *630 the date of delivery under Galen is uncertain and the participant and patient will have to "speculate" about "an unpredicticable event." The fallacy of this argument becomes readily apparent when consideration is given to the fact that one of the first things an obstetrician does is to determine the delivery date in order to establish a care regimen and protocol for the patient and set future examination dates. See The Merck Manual of Diagnosis and Therapy 1744-59 (Robert Berkow, M.D., et al. eds., 15th ed. 1987); see also The Merck Manuals Online Medical Library § 22 (Robert S. Porter, M.D., et al. eds., 2003) available at http://www.merck. com/mmhe/sec22/ch257/ch257b.html. Be that as it may, it is not the delivery date that is the significant factor under the Galen standard: it is the point in time when the mother is no longer able to make the necessary choice between a participant and a nonparticipant, and the court in Galen makes that clear. This will be a question of fact in most cases.
In conclusion, I fully align myself with the decisions from the Third and Fourth District Courts in Ruiz and Ortiz. They got it right: they properly applied Florida Supreme Court precedent; they articulated the correct standard; they recognized direct conflict with Alexander, which they declared to be wrongfully decided; and they arrived at the correct result. I note with interest that the majority states that the distinction between its standard and the Galen standard is "semantic" and "consistent with the Braniff [Galen] dicta." I note these assertions because they literally beg the question: why doesn't the majority simply apply" the Galen standard as required by the doctrine of stare decisis.
As to the certified question, while I definitely think this is a case the Florida Supreme Court should review, I believe that the question I framed in my proposed opinion is the appropriate question to certify. In addition, I believe that the following question should also be certified:
IS THE STANDARD ESTABLISHED IN GALEN FOR DETERMINING WHEN THE NICA NOTICE MUST BE GIVEN APPLICABLE IN CASES WHERE THE NOTICE IS REQUIRED, OR IS IT DICTA?
NOTES
[1] §§ 766.301-316, Fla. Stat. (2002).
[2] Section 395.002(9)(b), Florida Statutes, defines "emergency medical condition" as meaning:

(b) With respect to a pregnant woman:
1. That there is inadequate time to effect safe transfer to another hospital prior to delivery;
2. That a transfer may pose a threat to the health and safety of the patient or fetus; or
3. That there is evidence of the onset and persistence of uterine contractions or rupture of the membranes.
(Emphasis added).
[3] We appreciate Judge Sawaya's thorough special concurrence but do not think our decision today is in tension with Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla. 1997). There, the court answered in the affirmative the following certified question:

WHETHER SECTION 766.316, FLORIDA STATUTES (1993), REQUIRES THAT HEALTH CARE PROVIDERS GIVE THEIR OBSTETRICAL PATIENTS PRE-DELIVERY NOTICE OF THEIR PARTICIPATION IN THE FLORIDA BIRTH RELATED NEUROLOGICAL INJURY COMPENSATION PLAN AS A CONDITION PRECEDENT TO THE PROVIDERS' INVOKING NICA AS THE PATIENTS' EXCLUSIVE REMEDY?
In dicta, the court stated that the notice must be provided "a reasonable time prior to delivery, when practicable." Id. at 310 (emphasis added). See Cirelli v. Ent, 885 So.2d 423, 427 (Fla. 5th DCA 2004) (characterizing as dicta statement addressing issue not within scope of certified question); accord Johnson v. State, 557 So.2d 203, 206 (Fla. 5th DCA 1990) (Harris, J., concurring specially). At the time Braniff was decided, the word "practicable," or its equivalent, did not appear in the statute, nor did the statute contain any exceptions from its mandatory directive. Subsequently, the legislature amended the statute in response to Braniff. Instead of interjecting the word "practicable" as a component of the rule, the legislature added the sentence containing exceptions, including that notice "need not be given . . . when notice is not practicable." We are construing the amended statute and make the distinction between the rule and the exception based on the language of the amended statute. Thus, "practicability" only is relevant in an analysis of the exception, not the rule. This is why we disagree with Judge Sawaya's conclusion that the "test" for when notice is required is "practicability." As for the language in Braniff requiring the notice to be given "a reasonable time prior to delivery," we think it more appropriate to apply the long-standing principle that, when no time for performance of an act is specified, the law implies that the act be performed within a reasonable time after the time for performance is triggered. Burnsed, 290 So.2d at 19. This approach results in a rule that is more workable because providers need not speculate about when notice is due. Otherwise, providers and obstetrical patients are left with a rule that can only be applied in hindsight because it uses as a trigger an unpredictable subsequent event. In any event, any distinction between the two approaches is largely semantic because our analysis leads to the same result and is, therefore, entirely consistent with the Braniff dicta.
[1] The provisions of the plan are contained in sections 766.301 through 766.316, Florida Statutes (2002). We refer to these provisions as NICA as other courts have consistently done. See, e.g., Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 948 So.2d 705 (Fla.2007); Weinstock v. Houvardas, 924 So.2d 982 (Fla. 2d DCA 2006); Sunlife Ob/Cyn Servs. of Broward County, P.A. v. Million, 907 So.2d 624 (Fla. 4th DCA 2005); Tabb v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 880 So.2d 1253 (Fla. 1st DCA 2004).
[2] We note that two other doctors, Dr. Goss and Dr. Parker, were also granted leave to intervene.
[3] Two of the admissions required hospital stays of two or more days. The record shows that Mrs. Weeks was admitted October 15 to October 19 and again from October 25 to October 27.
[4] See Sinclair v. State, 853 So.2d 551, 552 n. 2 (Fla. 1st DCA 2003); Miami Stage Lighting, Inc. v. Budget Rent-A-Car Sys., Inc., 712 So.2d 1135, 1137 n. 2 (Fla. 3d DCA), review denied, 728 So.2d 200 (Fla.1998); In re Scala, 523 So.2d 714, 718 n. 1 (Fla. 4th DCA 1988) (Glickstein, J., dissenting); Arnold Lumber Co. v. Harris, 503 So.2d 925 (Fla. 1st DCA 1987); Gulf Coast Home Health Servs. of Fla., Inc. v. Dep't of Health & Rehabilitative Servs., 503 So.2d 415, 417 (Fla. 1st DCA 1987); Barry Hinnant, Inc., v. Spottswood, 481 So.2d 80, 81 n. 1 (Fla. 1st DCA 1986); see also Ashman v. State, 886 So.2d 1079, 1081 (Fla. 5th DCA 2004); Cooper v. State, 845 So.2d 312 (Fla. 2d DCA 2003).
[5] Section 766.316 was amended, effective July 1, 2007, by chapter 2007-230, section 205, Laws of Florida, to substitute a reference to section 395.002(8)(b) for the reference to section 395.002(9)(b) in the last sentence because the definition of "emergency medical condition" was moved to that subsection. The amendment does not impact our analysis.
[6] We note, parenthetically, that the definition of "emergency medical condition" is now found in section 395.002(8)(b), Florida Statutes. Nevertheless, the definition remains the same.
[7] We believe that the notice requirement is triggered by formation of the obstetrical patient relationship with the participant. Therefore, it is the better practice for the participant to provide the notice at the time the relationship is established. Otherwise, in order to allow the mother sufficient time to make the necessary choice between a participant and a non-participant, the notice must be given "a reasonable time prior to delivery, when practicable." Galen, 696 So.2d at 310; see also Athey; Domond; Ortiz: Ruiz. Under the standard we apply, which we label "practicability," the factor that determines whether the notice must be given is the point in time when the mother is able to make the necessary choice.